**COUNTRY CLUBS, INC., Plaintiff-Appellant,**

v.

**ALLIS–CHALMERS MANUFACTURING CO., and Allis-Chalmers Sports Products, Inc., Defendants-Appellees.**

**No. 20083.**

United States Court of Appeals,
Sixth Circuit.

Aug. 19, 1970.

Paul T. Gillenwater, and W. E. Badgett, Knoxville, Tenn., Norman L. Griffin, Knoxville, Tenn., on the brief, for appellant.

E. Bruce Foster, Knoxville, Tenn., for appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and BROOKS, Circuit Judges.

PHILLIPS, Chief Judge.

This is a diversity of citizenship case arising out of a contractual dispute.

Plaintiff, Country Clubs, Inc., is a Tennessee corporation with its office in Knoxville, Tennessee. Defendants are Allis-Chalmers Manufacturing Company (hereafter Manufacturing Company), a Delaware corporation with its principal offices in Milwaukee, Wisconsin, and Allis-Chalmers Sports Products, Inc. (hereinafter Sports Products), an Illinois corporation with principal offices in Harvey, Illinois. (Where a reference is intended to include both defendant corporations "Allis-Chalmers" will be used in this opinion.) Jurisdiction is not disputed and both parties agree that Tennessee law is controlling. Further there is agreement that the dispute involves a sale of goods within the meaning of the Uniform Commercial Code as enacted in Tennessee.

Insofar as pertinent to this appeal the facts as found by the District Court and as accepted by both of the parties are as follows:

In October 1966 plaintiff bought a total of 37 motorized golf carts from the defendant Sports Products. In April 1967 plaintiff purchased an additional 16 golf carts from the defendant Manufacturing Company. Prior to the purchase and sale of the carts a representative of Allis-Chalmers had operated demonstrator carts at the plaintiff's country club where the carts were to be used by the

plaintiff. Also before the purchase the president of the plaintiff, Mr. Jack Comer, had held discussions with a representative of Allis-Chalmers about operating a dealership for the sale of golf carts. Although he did not become an Allis-Chalmers dealer, Mr. Comer retained a copy of the dealership agreement which by its salient terms provided:

"This warranty is the only warranty upon which the Company's new machinery is sold. NO OTHER WARRANTY SHALL BE IMPLIED AND ALL STATUTORY WARRANTIES SHALL BE DEEMED WAIVED." (Emphasis in the agreement.)

Following this language the agreement provided a general warranty which purported to limit liability of Allis-Chalmers to the making of repairs and replacement of parts, etc. When plaintiff purchased the carts it used order forms supplied by Allis-Chalmers. These forms provided that:

"This order is submitted subject to the provisions of the Dealer's Agreement now in effect between Allis-Chalmers Manufacturing Company (the Company) and the Dealer, all the applicable provisions of which are incorporated herein by reference. *The machinery is warranted only to the extent provided in the Company's warranty set forth in the Dealer's Agreement."* (Emphasis supplied.)

The warranty and limitation also appear in a letter to Mr. Comer from Allis-Chalmers which acknowledged receipt of his order and asked him to sign formally and specifically the warranty provisions. He never signed this letter.

Shortly after the purchase, the carts were put into use and began to develop multiple problems. Ultimately it was agreed that Allis-Chalmers would transport all the carts back to the factory at Frankfort, Michigan, for repairs and reconditioning which would make them suitable for plaintiff's use. Apparently this was being done satisfactorily until Allis-Chalmers submitted a bill for $4,-663 to plaintiff as part of the $12,000 cost of repairing the carts. This claimed amount was said to cover parts not within the replacement terms of the warranty but which needed replacing as the result of ordinary wear and tear. Plaintiff's ultimate response to this bill was the filing of the present law suit. Plaintiff sought damages of $100,000 which included costs of the carts to plaintiff as well as amounts for parts and labor secured by plaintiff, lost revenues and other items.

Defendant counter-claimed for $4,663, the amount which precipitated this suit.

District Judge Robert L. Taylor held that in the course of dealing and performance between the parties plaintiff agreed to the exclusion of warranties except those provided for by the dealership agreement, and that plaintiff was limited to its repair and replacement rights thereunder and could not recover money damages. It was further held that defendant had not proved its counter-claim. The plaintiff appeals. We affirm.

The single narrow issue, and the only issue we decide, is whether under T.C.A. § 47–2–316 two businessmen in an arms length transaction may in their course of dealing or course of performance exclude or limit the implied warranty of merchantability provided by T.C.A. § 47–2–314.

The Tennessee Supreme Court has not spoken on the precise subject raised on this appeal. See generally, Comment, Products Liability—Proceeding Apace, 33 Tenn.L.Rev. 341, 350ff (1966) and Noel, Products Liability of Retailers and Manufacturers in Tennessee, 32 Tenn.L.Rev. 207 (1965).

T.C.A. § 47–2–316(3) (c) provides: "an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade." This language specifically provides that either "course of dealing" or "course of performance" may become an occasion giving rise to the exclusion or modification of implied warranties, the

warranty of merchantability being one such warranty. T.C.A. § 47–2–314. To determine the meaning of the terms employed in these sections reference must be made to §§ 47–1–205 and 47–2–208 of the Code, respectively.

Course of dealing is defined as:

" * * * a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." T.C.A. § 47–1–205(1).

As to course of performance it is said that:

"Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." T.C.A. § 47–2–208.

█ District Judge Taylor found as facts, fully supported by the record, that Mr. Comer and Allis-Chalmers had held discussions prior to the purchases as to related matters and that during these discussions the warranty provisions of the dealership agreement had come up with Mr. Comer indicating his dissatisfaction with them. When problems with the carts developed he communicated with Allis-Chalmers, which sent representatives to the Country Club. Thereupon it was agreed that the carts would be taken back to the factory at Frankfort, Michigan, at Allis-Chalmers' expense and put in sound condition for plaintiff's use. Mr. Comer asserted at trial that he did not read that portion of the order form which incorporated by reference the warranty limitations set out in the dealership agreement. The District Court noted that Mr. Comer is

an experienced businessman and attorney, and held that his having entered the order which contained clear references to the limiting document was sufficient to give him notice or chargeable knowledge of the purported limitation found in a document which he had in his possession. In the particular circumstances of this case we agree. The District Court found that Mr. Comer, notwithstanding the reference, had placed his order on the form, even though he did not sign it as requested. He had filed numerous claims under the warranty provisions prior to suit and his claim that the carts be taken back for repairs was asserted under the warranty provision. In defending defendant's counterclaim he asserted that the parts furnished were within the terms of defendant's limited warranty. The District Court found that plaintiff had acquiesced in the limited warranty provisions.

█ We think this factual situation is within the meaning of course of performance, § 47–2–208(1), or course of dealing, § 47–1–205(1) and thus could be the basis for a limitation of implied warranties. § 47–2–316(3).[1]

In view of our disposition of the case we do not reach the other question urged, whether the language of the dealership agreement, apart from the conduct of the parties, would be sufficient in itself to exclude or limit warranties set out in T.C.A. § 47–2–314. Nor do we intimate any view whatever as to whether such language would be sufficient to relieve a party of tort responsibility for injuries caused by a defective instrumentality.

█ We have considered the other point raised in which it is claimed that the defendant was guilty of fraud in selling carts with defects that were known to it. The District Court held that the proofs did not establish fraud.

---

1. It is recognized that "course of dealing" and "course of performance" are not duplicitous concepts. However we think the elements of both concepts are sufficiently evidenced in this case that no attempt need be made to distinguish the one from the other.

This finding is not clearly erroneous. Rule 52(a), Fed.R.Civ.P.

Affirmed.

No costs are awarded. Each side will bear its own costs on appeal.