[No. 3561–1–III. Division Three. March 3, 1981.]

HARTWIG FARMS, INC., ET AL, *Plaintiffs,* v. PACIFIC
GAMBLE ROBINSON CO., *Respondent,* TOBIASON
POTATO COMPANY, INC., *Appellant.*

*Homer A. Crollard* and *Gavin, Robinson, Kendrick, Redman & Mays,* for appellant.

*Diehl R. Rettig* and *Raekes, Rettig & Osborne,* for respondent.

ROE, A.C.J.—This case involves the validity of a disclaimer placed on an invoice after a contract of sale has been made. The trial court held as a matter of law that such a disclaimer was not effective. We agree.

In 1977, plaintiff Hartwig Farms, Inc., which usually grew russet potatoes, purchased blue tag certified Norgold seed potatoes from Pacific Gamble Robinson. Plaintiffs Rizzuti and Anderson also purchased blue tag certified Norgold seed potatoes from Pacific that spring. Blue tag certified seed potatoes are those which have passed field inspections and are certified by the North Dakota State Seed Department to be within specified disease tolerances, including a 1 percent tolerance for blackleg. When the potatoes planted by the plaintiffs came up, however, there was a 75 to 80 percent infestation of blackleg, resulting in crop loss for which they sought damages.

The plaintiffs then sued Pacific, alleging negligence and breach of express and implied warranties. Pacific, in turn, cross-claimed against Tobiason Potato Company, from whom Pacific had purchased the seed, and Gilleshammer, who grew the seed. Tobiason made a tender of defense to

Gilleshammer, who accepted the tender.[1] After a 4–week trial, at which evidence concerning warranties and the language of the disclaimer was presented, the court ruled as a matter of law the warranties had not been disclaimed and refused to give instructions on any disclaimers. It did, however, instruct on the plaintiffs' theory of negligence, as well as on breach of express warranty and the implied warranty of merchantability. The jury found for both plaintiffs; in answer to special interrogatories, it found there was no negligence but that both Pacific and Tobiason had breached the implied warranty of merchantability. As a result, it gave judgment to Pacific over against Tobiason on its cross claim. Tobiason has appealed, urging the trial court erred in its ruling that there had been no disclaimer.

Tobiason does most of its business by telephone. Seed brokers, such as Pacific, call and order seed; an oral agreement for sale is made at that time. After the sale is complete, Tobiason sends a written confirmation of sale which the broker signs and returns. The confirmation of sale does not contain any disclaimer of warranties. Tobiason ships the seed at the time it is needed by the broker. The invoice which accompanies each shipment does contain a disclaimer.[2] Tobiason argues this disclaimer was effective to exclude the implied warranty of merchantability.

The Uniform Commercial Code allows a seller to give warranties[3] and also to limit or exclude them.[4] Dis-

---

[1]Gilleshammer also brought the State of North Dakota into the suit, seeking indemnification. This claim was dismissed before trial.

[2]The disclaimer reads:
"Tobiason Potato Co. gives no warranty, express or implied, as to description, variety, quality, or productiveness, and will not in any way be responsible for the crop. All claims must be reported immediately on receipt of cars and full particulars mailed within 5 days or no claim will be allowed."

[3]Warranties may be either express, RCW 62A.2–313, or implied. The implied warranties are of merchantability, *i.e.*, fit for ordinary purposes, RCW 62A.2–314,

claimers, however, are not favored in the law; as a result, courts have added two conditions for effectiveness: a disclaimer must be explicitly negotiated or bargained for and it must set forth with particularity the qualities and characteristics being disclaimed.[5] *Berg v. Stromme,* 79 Wn.2d 184, 484 P.2d 380 (1971); *Dobias v. Western Farmers Ass'n,* 6 Wn. App. 194, 200, 491 P.2d 1346 (1971); *DeCoria v.*

---

or of fitness for a particular purpose, which arises when a seller knows of the particular purpose for which the goods are required and that the buyer is relying on the seller's expertise. RCW 62A.2–315.

[4]RCW 62A.2–316:

"(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (RCW 62A.2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subsection (2)

"(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

"(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

"(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

"(4) Notwithstanding the provisions of subsections (2) and (3) of this section and the provisions of RCW 62A.2–719, as now or hereafter amended, in any case where goods are purchased primarily for personal, family or household use and not for commercial or business use, disclaimers of the warranty of merchantability or fitness for particular purpose shall not be effective to limit the liability of merchant sellers except insofar as the disclaimer sets forth with particularity the qualities and characteristics which are not being warranted. Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (RCW 62A.2–718 and RCW 62A.2–719)."

[5]In response to *Berg v. Stromme, supra,* RCW 62A.2–316 was amended in

*Red's Trailer Mart, Inc.*, 5 Wn. App. 892, 491 P.2d 241 (1971). A disclaimer which is made after a sale is completed cannot be effective because it was not a part of the bargain between the parties. *Dorman v. International Harvester Co.*, 46 Cal. App. 3d 11, 120 Cal. Rptr. 516 (1975); *Cambern v. Hubbling*, 307 Minn. 168, 238 N.W.2d 622 (1976); *Sugarland Indus., Inc. v. A.J. Falco*, 360 S.W.2d 806 (Tex. Civ. App. 1962). Here, the sale of seed was an oral contract; both Tobiason's confirmation of sale, which did not contain a disclaimer, and the invoice, which did, were sent to Pacific after the sale was complete. There was no discussion between Pacific and Tobiason concerning the disclaimer and no agreement that Pacific would be bound by it. Any disclaimer on Tobiason's invoice was unbargained for and thus not effective to exclude any warranty.

▮ Tobiason relies upon RCW 62A.2–207[6] to argue the disclaimer was effective based on the fact that prior invoices sent by Tobiason and received by Pacific incorporated the disclaimer into the present contract. RCW 62A.2–207 allows an offeree to add additional terms to his accept-

---

1974 to require particularity in consumer, *i.e.*, noncommercial, transactions. RCW 62A.2–316(4). There was no change, however, in the requirement that a disclaimer must be negotiated in order to be effective.

[6]RCW 62A.2–207 provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) the offer expressly limits acceptance to the terms of the offer;

"(b) they materially alter it; or

"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Title."

ance without rejecting the contract. Between merchants[7] such terms become part of the contract unless such terms materially alter it. If the terms are such as to materially alter the contract, they do not become a part of it unless accepted by the offeror. In *Roto–Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497 (1st Cir. 1962), the court held the disclaimer on a sales acknowledgment to be a material alteration and an acceptance conditional on the offeror's assent to the additional term. The *Roto–Lith* court also held a buyer, when he accepted goods, became bound by the additional terms set by the seller. This result has not been followed by all courts and we decline to follow it here. To interpret this section as the *Roto–Lith* court did would always put the advantage in the sales transaction on the offeree; he would always have a contract on his own terms. The better interpretation of this section is to view the contract as containing the terms agreed to by both parties and to supply the other terms as the code dictates.[8] *Southern Idaho Pipe & Steel Co. v. Cal–Cut Pipe & Supply, Inc.*, 98 Idaho 495, 567 P.2d 1246 (1977). The code does not imply disclaimers; in fact, disclaimers are not favored in the law. Thus, RCW 62A.2–207 should not be used to supply the negotiated agreement required for an effective disclaimer. Merely because Pacific had notice of the disclaimer's language does not mean it agreed to it. We will not supply that agreement.

 ▇ Tobiason's other arguments concerning the validity of its disclaimer rest upon interpretations of RCW 62A.2–

---

[7]A merchant is defined by the code as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction . . ." RCW 62A.2–104(1). Both Pacific and Tobiason were in the business of selling seed, and thus are chargeable with the knowledge and skill of merchants.

[8]For instance, the code will supply terms left open in a contract if there is a reasonably certain basis for doing so, RCW 62A.2–204(3). The code will also supply a price term, RCW 62A.2–305, the quantity of an output or requirement contract, RCW 62A.2–306, the place of delivery, RCW 62A.2–308, or the time of delivery, RCW 62A.2–309.

316.[9] First, it argues the language of the disclaimer is sufficiently like "as is" to effectively disclaim the implied warranty of merchantability under subsection (3). However, the purpose of this section is to protect buyers from clauses in sales contracts which seek to exclude "all warranties, express or implied." Uniform Commercial Code, Official Comment 1, RCWA 62A.2–316 (1976). Thus, the language must be sufficiently clear to put the buyer on notice that warranties are excluded. Tobiason's disclaimer does not make it clear the buyer is assuming the risk as to the quality of the goods purchased. Uniform Commercial Code, Official Comment 7, RCWA 62A.2–316 (1976). The language of the disclaimer is not similar enough to "as is" or "with all faults" to give it effect under subsection (3).

In addition, the trial court found the disclaimer inconspicuous. The type used to set the disclaimer is the smallest used on the entire invoice. Although subsection (3) itself does not require conspicuousness, courts have supplied · such a requirement. *Woodruff v. Clark County Farm Bureau Coop. Ass'n,* 153 Ind. App. 31, 286 N.E.2d 188 (1972); *Fairchild Indus., Inc. v. Maritime Air Serv., Ltd.,* 274 Md. 181, 333 A.2d 313 (1975); *Gindy Mfg. Co. v. Cardinale Trucking Corp.,* 111 N.J. Super. 383, 268 A.2d 345 (1970). We also believe any disclaimer, regardless of form, should be conspicuous to give the buyer notice of it. If a buyer is unaware of a potential disclaimer, he cannot effectively bargain for it. Tobiason argues Pacific's knowledge of the disclaimer renders it conspicuous. However, actual knowledge of the disclaimer is insufficient to give it effect. *Dobias, supra* at 200. Without negotiation and agreement, no disclaimer, including the present one, can be effective.[10]

---

[9]Because the disclaimer does not contain the word "merchantability", it is ineffective under RCW 62A.2–316(2). Tobiason does not argue otherwise.

[10]Tobiason cites cases in which conspicuousness gives way when the buyer knows of the disclaimer. *Holcomb v. Cessna Aircraft Co.,* 439 F.2d 1150 (5th Cir.), *cert. denied,* 404 U.S. 827, 30 L. Ed. 2d 56, 92 S. Ct. 62 (1971); *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.,* 428 F. Supp. 364 (E.D. Mich. 1977); *Smith*

The question of conspicuousness is one of law for the trial court. *Mieske v. Bartell Drug Co.,* 92 Wn.2d 40, 593 P.2d 1308 (1979); *Schroeder v. Fageol Motors, Inc.,* 86 Wn.2d 256, 544 P.2d 20 (1975). The trial court determined that Tobiason's disclaimer was "anything but conspicuous." We agree.

Tobiason next argues the implied warranty of merchantability was effectively disclaimed by a course of dealing[11] or by trade usage.[12] RCW 62A.2–316(3)(c). It urges that because Pacific had accepted the invoices containing the disclaimer for approximately 15 years, there was a course of dealing between the parties to exclude warranties. In *Nakanishi v. Foster,* 64 Wn.2d 647, 393 P.2d 635 (1964), the plaintiff seed buyer sought damages for crop loss due to defendants' mislabeling of lettuce seed. In reversing the trial court's decision that the defendants were liable as a matter of law, the Supreme Court stated:

> [P]laintiffs had been doing business with [defendants] for more than 15 years, during which time tags with the printed disclaimer of warranty were attached to all bags of seed and appeared on all orders and invoices, thus proving a custom in the sale of seed between plaintiffs and [defendants].

*Nakanishi v. Foster, supra* at 654. The disclaimer language

---

*v. Sharpensteen,* 521 P.2d 394 (Okla. 1974). However, when there is only knowledge, without any assent to the terms of the disclaimer, the disclaimer cannot be effective. *Dobias, supra* at 200.

[11]RCW 62A.1–205:

"Course of dealing and usage of trade. (1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."

[12]RCW 62A.1–205(2):

"(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court."

there was contained not only on the tags, but also on the defendants' letterheads, invoices and contracts. The buyer agreed at the time of ordering the seed that there were no warranties or representations made by the defendants. Here, however, there was no discussion of or agreement to the disclaimer. There was nothing in the dealings between Tobiason and Pacific from which an assent to the disclaimer could be inferred, and no course of dealing to which to refer to establish one. *Mieske, supra* at 48–49; *see Country Clubs, Inc. v. Allis–Chalmers Mfg. Co.,* 430 F.2d 1394 (6th Cir. 1970).

■ Warranties may also be disclaimed by trade usage. The existence and scope of trade usage must be proved as a fact, *i.e.,* a party relying on trade usage may go to the trier of fact when a dominant pattern has been fairly evidenced. Uniform Commercial Code, Official Comment 9, RCWA 62A.1–205 (1976). No dominant pattern was shown. One witness, in answer to a long and involved question of whether there was a trade practice of not granting warranties, answered yes. Later, the same witness indicated his company gave no warranties. The totality of the evidence is insufficient to establish a dominant pattern in the industry. The trial court was correct in ruling as it did, in not submitting this question to the jury.

■ Pacific seeks attorney's fees for this appeal because it was granted judgment over against Tobiason. Indemnity will lie when a retailer incurs liability to the ultimate consumer through reliance on statements made by the manufacturer. *Dobias v. Western Farmers Ass'n,* 6 Wn. App. 194, 200, 491 P.2d 1346 (1971). Attorney's fees may be a proper element of consequential damages when the action is brought or defended by a third party not privy to the contract through which the litigation arose. *Armstrong Constr. Co. v. Thomson,* 64 Wn.2d 191, 196, 390 P.2d 976 (1964); *Manning v. Loidhamer,* 13 Wn. App. 766, 769, 538 P.2d 136 (1975). Here, through Tobiason's breach of warranty, Pacific was exposed to litigation with the plaintiffs, who were strangers to the contract between Pacific and

Tobiason. Thus, Tobiason is liable to Pacific for attorney's fees on this appeal. A large amount has been requested. A hearing should be conducted to determine a reasonable award.

The judgment is affirmed and the case is remanded to the trial court for a determination of attorney's fees.

GREEN and MUNSON, JJ., concur.