[No. 71222-1.   En Banc.]
Argued January 31, 2002.      Decided June 6, 2002.

PUGET SOUND FINANCIAL, L.L.C., *Respondent*, v. UNISEARCH, INC., *Petitioner*.

430

*Camden M. Hall*, *Roger D. Mellem*, and *Sharon E. Cates* (of *Foster Pepper & Shefelman, P.L.L.C.*), for petitioner.

*Karien L. Balluff* and *Shannon D. Braden* (of *Young, DeNormandie & Oscarsson, P.C.*), for respondent.

*Delbert D. Miller* on behalf of National Public Records Research Association, amicus curiae.

BRIDGE, J. — Between 1993 and 1996, Puget Sound Financial, L.L.C., f/k/a Factors of Puget Sound (Factors), routinely contacted Unisearch, Inc., (Unisearch) by telephone to request that Unisearch search for specified Uniform Commercial Code (U.C.C.), Title 62A RCW, filings in Washington. Unisearch would conduct the requested searches and then send the search results in a report to Factors. All of the search reports included the statement, "The responsibility for maintaining public records rests with the filing officer, and Unisearch, Inc. will accept no liability beyond the exercise of reasonable care."[1] Unisearch charged $25 for each search, and every invoice contained the statement "Liability Limited to Amount of Fee."[2] Unisearch completed 47 such searches prior to the present dispute. We are now asked to determine whether limitations on consequential damages presented in regular invoices for the purchase of commercial services can be enforced against a business purchaser. We hold that these liability limitation clauses are a part of the contract for services between Factors and Unisearch. Factors' recovery, if any, against Unisearch is limited to $25.

## FACTS

Factors is in the business of purchasing accounts receivable from companies and loaning money to other businesses. *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, noted at 106 Wn. App. 1016, slip op. at 2 (2001). Beginning in 1993, Factors hired Unisearch to conduct searches of U.C.C. filings in Washington to locate existing liens on a potential applicant's assets. Factors would telephone Unisearch and request a U.C.C. search under a particular name. Unisearch would complete the search and then send a search report and invoice to Factors.

---

[1] Clerk's Papers (CP) at 2063.

[2] *Id.* at 2065.

In July 1996, Factors contacted Unisearch requesting a search for "The Benefit Group, Inc."[3] Unisearch produced a search report for "The Benefit Group, Inc." indicating that no U.C.C. filings were found. Unisearch charged Factors $25 for this service.

Upon receiving the report, Factors loaned The Benefit Group $100,000, secured by existing and future accounts receivable and other business assets. A year later, The Benefit Group defaulted on the loan. When Factors attempted to realize on the collateral, it discovered that Travelers Insurance Co. (Travelers) had a preexisting priority lien. Travelers' lien was filed under the name, "The Benefits Group, Inc." Unisearch had failed to locate this plural spelling of Factors' requested search.[4]

## PROCEDURAL HISTORY

Factors filed a lawsuit against Unisearch in July 1998, alleging negligence and breach of contract. Both parties filed motions for summary judgment, which the trial court denied. The trial court found that there was a triable issue of fact whether Unisearch exercised reasonable care when conducting its search, and a trial was set for March 27, 2000. Prior to trial, both parties filed additional motions for summary judgment; Unisearch claimed that if found liable, Factors' recovery for damages would be limited to $25. The trial court denied Factors' motion for summary judgment on liability, but granted Unisearch's motion for summary judgment on damages, finding that " '[i]f plaintiff were to establish liability . . . arising either in contract or in tort,

---

[3] *Id.* at 4.

[4] Factors and Unisearch provide conflicting views of Unisearch's standard practice when conducting U.C.C. searches. Unisearch maintains that it searches only for the specific term requested and, if it perchance locates a potential additional match, then it will notify Factors of the variation. Factors contends that Unisearch would routinely search for, and locate, slight variations in spelling and that Unisearch did not exhibit reasonable care when it failed to locate the variation, relying on *In re Esparza*, 118 Wn.2d 251, 821 P.2d 1216 (1992) (holding a landlord's lien was not invalid because it was filed under Esparsa instead of Esparza).

the measure of damages . . . would be limited to the cost of the services rendered, viz., $25.00.' "[5] Factors appealed.

The Court of Appeals held that the trial court had abused its discretion in granting Unisearch's motion for summary judgment as to damages and remanded to proceed to trial on both liability and damages. The court stated, "Summary judgment would only be proper if Unisearch is able to show that Factors undisputedly agreed to include the limitations clause in their agreement for subsequent transactions."[6] The court held that "[t]he clause at issue is valid and enforceable as long as a fact finder determines that the parties bargained for the term."[7] The court disagreed with Unisearch's argument that the invoices created a course of dealing warranting summary judgment, stating "Unisearch has not shown that Factors unequivocally agreed to be bound by the terms of the invoice."[8]

Unisearch here seeks review of the Court of Appeals' reversal of the trial court's grant of partial summary judgment limiting Unisearch's potential liability, and Factors' recovery, to $25.

## ANALYSIS

Appellate courts review summary judgment motions de novo, interpreting all facts in the light most favorable to the nonmoving party, Factors in this case. *Marquis v. City of Spokane*, 130 Wn.2d 97, 104-05, 922 P.2d 43 (1996). Summary judgment is appropriate when there are no genuine issues of material fact and the case can be decided as a matter of law. *Id.*

---

[5] *Unisearch*, slip op. at 3.

[6] *Id.* at 11.

[7] *Id.* at 12.

[8] *Id.* at 11.

Contract Formation

Factors and Unisearch entered into an oral contract when Factors contacted Unisearch requesting its services. The terms of the oral contract are not in dispute. The parties do dispute whether the language in the search report and the invoices modified this oral contract, or were part of the contract itself. Factors asserts that it never accepted the liability limitation clause. Unisearch contends that the course of dealing between the parties established the liability limitation clause as part of the contract. As Unisearch emphasized, and we agree in part, "The invoice stated the price and quantity terms. Without **both** the search report and the invoice, there was no contract." Pet. for Review at 6. We hold that the language in the search reports and invoices was part of the contract.

Trade usage and course of dealing are relevant to interpreting a contract and determining the contract's terms. *See generally Bremerton Concrete Prods. Co. v. Miller*, 49 Wn. App. 806, 745 P.2d 1338 (1987). Ambiguity is not required before evidence of trade usage or course of dealing can be used to ascertain the terms of a contract. RESTATEMENT (SECOND) OF CONTRACTS §§ 222 cmt. b, 223 cmt. b (1981).

Section 222 of the *Restatement* pertaining to trade usage states:

(1) A usage of trade is a usage having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to a particular agreement. It may include a system of rules regularly observed even though particular rules are changed from time to time.

(2) The existence and scope of a usage of trade are to be determined as questions of fact. If a usage is embodied in a written trade code or similar writing the interpretation of the writing is to be determined by the court as a question of law.

(3) Unless otherwise agreed, a usage of trade in the vocation or trade in which the parties are engaged or a usage of trade of which they know or have reason to know gives meaning to or supplements or qualifies their agreement.

Unisearch has presented numerous examples of liability exclusions on invoices from other states as evidence of trade usage.[9] Unisearch has also presented examples of search firms who claimed that they would reimburse the search fees paid, if they made a mistake.[10] Additionally, Unisearch produced an expert who declared that "It is a standard practice in the UCC search industry to disclaim any liability resulting from the use of the information provided, and to provide a limitation of damages equal to the fee paid for the service."[11] Furthermore, amicus curiae, the National Public Records Research Association (NPRRA), notes:

> The industry practice is to place liability limitations on the invoices accompanying search results. This practice is born of customers' need for searches to be completed as quickly as possible. With customers expecting search results within the day and companies processing a multitude of searches, companies simply do not have time to negotiate the terms of all search orders received.

Br. of Amicus Curiae NPRRA at 11. We find this unrebutted evidence persuasive of trade usage, supporting the inclusion of the limiting language in the contract between Factors and Unisearch.

---

[9] All-Search & Inspection, Inc., UT: "[W]e accept no liability for errors or omissions." Bay Area Search, FL: "[W]e accept no liability for error or omission." Delany Corporate Services, Ltd., NY: "[W]e accept no liability for the report contained herein." Docu-Search California, CA: "We accept no liability for errors or omissions." Harbor City Research, Inc., MD: "[W]e accept no liability for errors or omissions." JM Search Services, Inc., FL: "[W]e accept no responsibility for error or omission." Kaufman Information Resources, Inc., NJ: "Although meticulous care has been taken in conducting this service, no liability is assumed." National Corporate Research, Ltd., DE: "[W]e accept no liability for the report contained herein." Northshore Paralegal Services, Inc., MA: "We cannot accept liability for error or omission." The Research Connection, Inc., NH: "Reasonable Care Is Taken In Every Search. We Accept No Liability." Search Company International, CO: "[W]e accept no liability for errors or omissions." U.C.C. Filing & Search Services, Inc., FL: "[W]e will accept no liability for errors and omissions." CP at 2937-50.

[10] CP at 2951-58.

[11] CP at 3070. Unisearch's expert, William J. Stokes, was the President of the National Public Records Research Association when he wrote his declaration. CP at 3063.

Section 223 of the *Restatement* regarding course of dealing states:

(1) A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

(2) Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement.

"Course of dealing may become part of an agreement either by explicit provision or by tacit recognition, or it may guide the court in supplying an omitted term." RESTATEMENT, *supra*, § 223 cmt. b.

Unisearch sent 47 search results and invoices to Factors prior to the transaction before this court. Unisearch contends that, after the first invoice was sent and Factors did not reject it, a course of dealing was established. We need not determine the impact of the first invoice to decide that, after 48 transactions, a course of dealing was clearly established. According to the *Restatement* a course of dealing can be established when there is "a common basis of understanding." RESTATEMENT, *supra*, § 223(1). We find a factually analogous Ninth Circuit case persuasive in determining that a common basis of understanding was achieved between Factors and Unisearch.

Applying California law, the Ninth Circuit held that a shipper's receipt of invoices containing language limiting the shipper's liability to $50 on 47 occasions prior to the disputed transaction was sufficient to presume knowledge of the term and that the limitation was enforceable. *Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1114-15 (9th Cir. 2000). A manufacturer and distributor of sporting goods had contracted with NNR for the transportation of golf balls and other sporting goods by ocean carriage. *Id.* at 1112. The court held that the provision was enforceable as a course of dealing, even though the shipper did not receive the invoice for the stolen shipment until two

weeks after the shipment was stolen. *Id.* at 1114-15. Significantly, the court held that the invoice terms and conditions could supplement the shipping agreement if there were sufficient course of dealing. *Id.* at 1113. The court then determined that 47 prior transactions were sufficient to establish a course of dealing. *Id.*

Thus, *NNR* presents a close analogy, which supports recognition of the liability limitation as established through the course of dealing between the parties. *See also Capitol Converting Equip., Inc. v. LEP Transp., Inc.,* 965 F.2d 391 (7th Cir. 1992) (recognizing course of dealing analysis appropriate to fill void in shipment contract; alleged unawareness of liability limitation clause in hundreds of invoices insufficient to invalidate clause); *Gov't of U.K. of Gr. Brit. & N. Ir. v. Northstar Servs., Inc.,* 1 F. Supp. 2d 521 (D. Md. 1998) (holding that terms and conditions of service printed on back of invoices, limiting liability for damage to shipments, were part of contract where more than 100 invoices were sent and shipper's representative was aware of terms and conditions).

■ Additionally, a recent decision from this court supports a conclusion that Unisearch's agreement with Factors could be interpreted as a "layered" contract, which incorporates the search reports and sales invoices. *See M.A. Mortenson Co. v. Timberline Software Corp.,* 140 Wn.2d 568, 998 P.2d 305 (2000). In *Mortenson,* we addressed a shrink-wrap license on software and held that the original purchase order was not an integrated contract, that the licensing agreement in the software packaging and instruction manual was part of the contract, and that the provision limiting damages to the recovery of the purchase price was not unconscionable. *Id.* at 571. We applied RCW 62A.2-204 pertaining to contract formation, to reach this conclusion: "[B]ecause RCW 62A.2-204 allows a contract to be formed 'in any manner sufficient to show agreement . . . even though the moment of its making is undetermined,' it allows the formation of 'layered contracts' . . . ." *Id.* at 584. Under either analysis, by trade usage and course of dealing,

Factors and Unisearch incorporated the liability limitation provisions into their contract for services.

## Enforceability of Liability Limitation

Having determined that the liability limitation is included in the contract between Factors and Unisearch, we must now determine whether these liability limitations are enforceable. The liability limitations will not be enforceable if they are unconscionable. *Mortenson*, 140 Wn.2d at 585. Whether an exclusionary clause[12] is unconscionable is determined as a matter of law. *Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990) (citing *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 262, 544 P.2d 20 (1975)).

Thirty years ago this court set the standard for applying warranty disclaimers in transactions involving a noncommercial entity. *See Berg v. Stromme*, 79 Wn.2d 184, 484 P.2d 380 (1971). According to the decision in *Berg*, warranty disclaimers in a contract must be both (1) explicitly negotiated and (2) set forth with particularity. *Id.* at 196. The presumption leans against the warranty disclaimer, and the burden lies on the party seeking to include the disclaimer to prove its legality. *Id.* at 194.

*Berg* involved the sale of a car from a car dealer to a consumer. The car had numerous mechanical problems, but the dealer claimed that the purchaser could not recover because the purchase contract contained warranty disclaimers. *Id.* at 185. The *Berg* court noted that "printed disclaimers of warranty in the purchase of new automobiles are now regarded with increasing disfavor by the courts." *Id.* at 187 (citing *Norway v. Root*, 58 Wn.2d 96, 361 P.2d 162 (1961)). Accordingly, the court stated, "unless there is proof of explicit departure from [the implied warranty of fitness with a new car], the presumption is that the dealer in-

---

[12] The same analysis for an exclusionary clause applies to a liability limitation clause in this case. Both terms relate to the exclusion of certain remedies. Thus, we use the terms interchangeably here.

tended to deliver and the buyer intended to receive a reasonably safe, efficient and comfortable brand new car." *Id.* at 195.

A few years later this court held that *Berg* applied in commercial transactions, but with some modifications to the original *Berg* analysis. In *Schroeder*, we shifted the presumption from the party seeking to validate the disclaimer to the party seeking to invalidate the liability limitation by presuming that the limitation was prima facie conscionable in a commercial transaction. 86 Wn.2d at 262-63. We stated, "It is readily apparent that both 'conspicuousness' and 'negotiations' are factors, albeit not conclusive, which are certainly relevant when determining the issue of conscionability in light of *all the surrounding circumstances.*" *Id.* at 260.

Thus, in *Schroeder* we adopted a totality of the circumstances approach for interpreting the permissibility of exclusionary clauses[13] in a commercial setting, instead of the two-prong approach applied to warranty disclaimers in *Berg* for a consumer transaction. The nonexclusive factors for assessing the totality of the circumstances include: (1) the conspicuousness of the clause in the agreement, (2) the presence or absence of negotiation regarding the clause, (3) the custom and usage of the trade, and (4) any policy developed between the parties during the course of dealing. *Id.* at 259-61. By extending part of *Berg* to commercial transactions, we expressed the intent to prevent unfair surprise in business dealings. *Id.* at 260.

In *American Nursery* this court made another modification and extension of the *Berg/Schroeder* analysis. In that case we confirmed the use of the two-prong *Berg* analysis for consumer transactions involving warranty disclaimers and in commercial transactions for the sale of goods where there is sufficient evidence of unfair surprise. 115 Wn.2d at 223-24. We thus also confirmed the *Schroeder* totality of the circumstances analysis for clauses excluding (or limiting)

---

[13] *See supra* note 8.

liability for consequential damages in commercial transactions for services where there is insufficient evidence of unfair surprise. *Id.* at 222-23; *see also Cox v. Lewiston Grain Growers, Inc.*, 86 Wn. App. 357, 367-70, 936 P.2d 1191 (1997). Finding no indicia of unfair surprise, this court then specifically applied the *Schroeder* analysis to a contract for services between commercial parties. *Am. Nursery*, 115 Wn.2d at 224-25. In applying the *Schroeder* totality of the circumstances analysis to determine conscionability, we referenced RCW 62A.2-719(3), which states, "Limitation of other consequential damages is valid unless it is established that the limitation is unconscionable."[14]

The Court of Appeals in this case stated that the exclusionary clause would not be valid if it were not explicitly bargained for. *Unisearch*, slip op. at 11-12. This consideration comes from *Berg* and is, therefore, not controlling in these circumstances. *Berg* involved a consumer transaction for a warranty disclaimer, which has been distinguished from a liability limitation clause in a commercial transaction, such as that presented by Factors and Unisearch. In a commercial transaction, as *Schroeder* and *American Nursery* make clear, whether the liability limitations clause was negotiated (or bargained for) is merely a factor and it is not necessarily the determinative factor in assessing the enforceability of the clause. *Am. Nursery*, 115 Wn.2d at 222 (citing *Schroeder*, 86 Wn.2d at 260).

Significantly, in *American Nursery*, we limited the application of the *Berg* rule for explicit policy reasons:

> In consumer sales transactions, intervention is warranted to counteract the inherent inequality of bargaining power and the resultant inequities. Parties to a commercial contract, however, generally have equal bargaining power and an equal ability to seek advice and alternative offers. As a result, commercial

---

[14] We have previously applied this U.C.C. section to service contracts, and we apply it by analogy here. *See Baker v. City of Seattle*, 79 Wn.2d 198, 201-02, 484 P.2d 405 (1971) (recognizing U.C.C. can be applied to common law contract analysis by analogy, especially when evaluating unconscionability).

contracts are less subject to the type of unfair surprise which may be found in consumer sales transactions. This being so, only those commercial transactions with sufficient indicia of unfair surprise in the negotiations should be subject to the *Berg* rule.

*Id.* at 224. We find these distinctions applicable to the case presented and conclude that *American Nursery* governs our analysis.

As a threshold matter, we conclude that there were no indicia of unfair surprise under these circumstances. Unlike the concern for unfair surprise, most commonly associated with a maze of fine print in warranty disclaimers, the search reports and invoices in this case were brief. The liability limitation clause printed on the invoice did not alter or change during any of the 48 transactions. Additionally, the invoices were directed to the attention of Factors' principals and Factors' president testified that he contemporaneously examined the invoices. Factors had received and paid numerous invoices prior to this dispute. We find all of these factors conclusive that there was no unfair surprise in this case.

Next, by evaluating the totality of the circumstances, we further conclude that the liability limitation clause in the contract for services between Factors and Unisearch is not unconscionable and is therefore enforceable. In *Schroeder* we recognized the following nonexclusive factors to consider in assessing the unconscionability of a liability exclusionary clause: (1) the conspicuousness of the clause in the agreement, (2) the presence or absence of negotiations regarding the clause, (3) the custom and usage of the trade, and (4) any policy developed between the parties during the course of dealing. *Schroeder*, 86 Wn.2d at 259-61. Additionally, in *American Nursery*, we noted that "[u]nconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3)

whether the important terms were hidden in a maze of fine print." 115 Wn.2d at 222 (citing *Schroeder*, 86 Wn.2d at 260).

## The Conspicuousness of the Clause

Our considerations regarding the conspicuousness of the clause[15] are the same as "whether the important terms were hidden in a maze of fine print";[16] therefore, we will evaluate these factors together. The invoice from Unisearch consists of a single sheet of paper with the liability disclaimer typed on the front of the document. The clause, "Liability Limited to Amount of Fee" appears on the upper right-hand portion of the invoice, inside a shaded box.[17] The clause is written in the same font size as other print on the invoice, albeit smaller than the address on the invoice. There are only a few lines of text on the invoice. Factors asserts that the writing was inconspicuous because it was blue print on a blue background. Having inspected a copy of the invoice, we conclude that the clause is not hidden in "a maze of fine print" and is not inconspicuous. *Am. Nursery*, 115 Wn.2d at 222 (citing *Schroeder*, 86 Wn.2d at 260).

## The Presence or Absence of Negotiations

The presence or absence of negotiations[18] overlaps with our evaluation of the manner in which the parties entered into the contract and whether the parties had a reasonable opportunity to understand the terms of the contract;[19] therefore, we will consider these factors together. The Court of Appeals stated that the parties did not negotiate for the term, although it remanded the case for determination of whether the liability limitation was explicitly bargained for. *Unisearch*, slip op. at 10. Both parties conceded in oral

---

[15] *Schroeder*, 86 Wn.2d at 260.

[16] *Am. Nursery*, 115 Wn.2d at 222 (citing *Schroeder*, 86 Wn.2d at 260).

[17] CP at 2065.

[18] *Schroeder*, 86 Wn.2d at 260.

[19] *Am. Nursery*, 115 Wn.2d at 222 (citing *Schroeder*, 86 Wn.2d at 260).

argument before this court that there was no specific negotiation of the liability limitation clauses. Factors asserts that, because there was no specific negotiation for the term, it should not be included in the contract. We disagree. While absence of negotiations may weigh in Factors' favor, Factors had a reasonable opportunity to understand the terms of the clause, which remained unchanged throughout the course of dealing.[20]

In addition, Factors asserts that *Hartwig Farms, Inc. v. Pacific Gamble Robinson Co.*, 28 Wn. App. 539, 625 P.2d 171 (1981), a case decided after *Schroeder* but before *American Nursery*, is determinative. *Hartwig* is distinguishable and not controlling here. In *Hartwig*, Division Three held that a warranty disclaimer included on an invoice sent after a contract for sale of seed was formed was ineffective as a matter of law. *Id.* at 540. Pacific, a seed broker, would telephone and order seed. After the sale was complete, the seed provider would send a written confirmation of sale, which the broker would sign and return. The confirmation of sale did not contain any disclaimer of warranties. The seed provider would then ship the seed accompanied by an invoice that included a warranty disclaimer. Therefore, considering *Hartwig* involved a contract for goods, not services, and a warranty disclaimer, not a liability exclusion clause, it presents a situation wholly distinct from the case before us.

## Custom or Trade Usage

In *American Nursery*, this court recognized that "[t]he party defending [a limitation of liability clause] may prove the clause is conscionable regardless of the surrounding circumstances if the general commercial setting indicates a prior course of dealing or reasonable usage of trade as to the exclusionary clause." 115 Wn.2d at 223 (citing *Mieske v. Bartell Drug Co.*, 92 Wn.2d 40, 49, 593 P.2d 1308 (1979); *Schroeder*, 86 Wn.2d at 260-61; *Hartwig*, 28 Wn. App. at

---

[20] *See supra* 434-38.

546-47). Unisearch provided numerous examples of invoices limiting liability from other states.[21] Unisearch also presented an expert who testified that liability exclusions were common industry practice. Furthermore, the amicus reveals that it is industry practice to limit liability in the U.C.C. search context. Factors did not contest the validity of this evidence. Consistent with our previous analysis of trade usage, we find this evidence supportive of the enforceability of the liability limiting clause.

## Course of Dealing

Also consistent with our previous analysis, we find the course of dealing supportive of enforcing the liability limiting clause. Unisearch sent Factors 48 invoices, and at least as many search reports, with identical disclaimers on each respective form. The parties present no evidence regarding whether the invoices were ever discussed, but Factors did in fact receive the invoices and search reports. *Unisearch*, slip op. at 10. Therefore, we conclude that the general commercial setting establishes a prior course of dealing. *Am. Nursery*, 115 Wn.2d at 223 (citing *Mieske*, 92 Wn.2d at 49; *Schroeder*, 86 Wn.2d at 260-61; *Hartwig*, 28 Wn. App. at 546-47).

We thus hold, as a matter of law, that the totality of the circumstances support the conscionability and enforceability of the liability limitation clause in the contract for services between Factors and Unisearch. We reverse the Court of Appeals decision and affirm the trial court's grant of summary judgment limiting Unisearch's liability, if any, to the amount of the fee charged for its service.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, and OWENS, JJ., concur.

---

[21] *See supra* note 9.