[No. 34961-2-II. Division Two. January 8, 2008.]

TACOMA FIXTURE COMPANY, INC., *Respondent*, v. RUDD COMPANY, INC., *Petitioner*.

548

*Richard L. Martens* (of *Martens & Associates, PS*), for petitioner.

*Eric C. Frimodt*, for respondent.

¶1 PENOYAR, J. — Tacoma Fixture Company, Inc. (TFC) regularly ordered paint and varnish products from Rudd Company, Inc., for use in its cabinet manufacturing business. Rudd shipped the products to TFC and separately mailed an invoice, which included several terms that TFC did not specifically agree to, including a warranty disclaimer, a remedy limitation, a forum selection clause, and an attorney fee clause. TFC experienced several problems with Rudd's products and sued for breach of express and implied warranties. Rudd asserted that it was protected by the terms of its invoice and filed a motion for summary judgment with the trial court. The court denied Rudd's summary judgment motion, holding that the invoice terms were not a part of the parties' contract. Because we agree with the trial court that the additional terms never became a part of the contract, we affirm.

## FACTS

¶2 Rudd began supplying TFC with paint and varnish products in the early 2000s. TFC generally placed its orders

with Rudd by telephone or fax, and Rudd would arrange for shipment of the products. Neither party would issue a written confirmation order, but Rudd did mail invoices to TFC after the goods were shipped and delivered.

¶3 The invoices contained several terms that the parties did not negotiate or agree to, including a term disclaiming all warranties and limiting both Rudd's liability and TFC's remedies,[1] a term selecting King County as the proper venue, and an attorney fee provision.

¶4 TFC experienced significant problems with Rudd's paint and coating products, including discoloration and cracking of the cabinets it manufactured using those products. TFC claimed that it notified Rudd as soon as there was a problem, but because the defects did not generally become apparent until 1 month after TFC received Rudd's products, TFC was unable to notify Rudd of the problem within 10 days (as required by the terms of Rudd's invoice).

¶5 TFC sued Rudd for breach of express warranties under RCW 62A.2-313, breach of the implied warranty of merchantability under RCW 62A.2-314, and breach of the implied warranty of fitness for a particular purpose under RCW 62A.2-315, claiming damages in excess of $1.5 mil-

---

[1] The warranty term stated as follows, in all capital letters:

Non Warranty - Please Read Carefully

Seller makes no warranty extending beyond the description of the goods on the face hereof, and there is no implied warranty of merchantability or of fitness for any particular purpose. Seller disclaims any liability for incidental or consequential damages. Claims of failure to meet specifications shall be deemed waived unless made in writing within ten (10) days of delivery. Seller's liability for any such failure shall be limited to the replacement of materials with respect to which such failure is claimed, or the repayment of any portion of the purchase price received therefor subject to the return of such materials to the seller. Without limiting the generality of the foregoing, buyer expressly assumes all risk of patent infringement by reason of its use of material provided hereunder in combination with other material or in operation of any process. If seller has delivered to buyer seller's data sheet with respect to the goods, buyer shall indemnify seller from and against all costs, expenses and damages arising from claims made by employees, visitors, and customers of buyer based upon any hazard or hazards referred to in said data sheet. Buyer shall assume all responsibility for bringing such hazards to the attention of its employees, visitors, and customers.

Clerk's Papers at 207.

lion. Rudd asserted that the warranty and liability terms on its invoice protected it against these claims; it further asserted an improper venue defense under the invoice term.[2] Accordingly, Rudd filed both a motion for summary judgment and a CR 12(b)(3) motion to dismiss for improper venue.

¶6 After a hearing on May 19, 2006, the trial court concluded that the terms on the back of Rudd's invoices were not a part of the agreement between the parties and, therefore, denied Rudd's motion for summary judgment. Additionally, the court concluded that, while Rudd's forum selection clause was not a part of the contract and thus not enforceable, Rudd had not waived its right to assert the improper venue defense. Rudd requested discretionary review of the court's denial of its summary judgment motion, which we granted, and TFC cross-appeals the trial court's conclusion that Rudd did not waive its improper venue defense.

## ANALYSIS

■ ¶7 The central issue here is whether Rudd's additional terms became part of its contract with TFC. Under the common law of contracts, additional terms may become part of the contract without express assent under a "layered contract" analysis. *See Puget Sound Fin., LLC v. Unisearch, Inc.*, 146 Wn.2d 428, 437, 47 P.3d 940 (2002); *see also M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 584-85, 998 P.2d 305 (2000) (holding that additional terms on a licensing agreement became a part of the contract in a consumer purchase). However, this case concerns a contract between merchants for the sale of goods, and it is therefore governed by Uniform Commercial Code (UCC) § 2-207 (RCW 62A.2-207). *See* RCW 62A.2-102 ("this Article applies to transactions in goods"), -104 (defining

---

[2] Rudd also included counterclaims for breach of contract (asserting that TFC refused to pay the balance for the supplied materials) and restitution, but neither party addressed these claims in their appellate arguments.

"merchant" as "a person who deals in goods of the kind"), -207(2).

■■ ¶8 The drafters of the UCC intended that § 2-207 apply to commercial transactions where, as here, a written memorialization of an oral agreement includes terms that were not originally discussed. *See* RCWA 62A.2-207 U.C.C. cmt. 1.

¶9 RCW 62A.2-207 provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Title.

Thus, RCW 62A.2-207 provides at least three routes to the formation of a contract: (1) where an offer is made and no conditions are placed on a "definite and seasonal expression of acceptance" and any additional terms become proposals or additions to the contract; (2) where an offer is made and the acceptance is expressly conditional on the other party's acceptance of the additional terms; and (3) where both

parties conduct themselves in a manner that recognizes the existence of the contract. In the first, the offeror dictates the terms; the second partially preserves the "last shot doctrine," where the counteroffer controls the terms; and in the third, the terms of the contract consist of those that the parties objectively agreed to by their conduct.

¶10 That the parties have struggled in their analysis of UCC § 2-207 is not surprising. *See generally* 1 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 3.37, at 510-11 (Joseph M. Perillo ed., rev. ed. 1993). Indeed, this section has been described as "a defiant, lurking demon patiently waiting to condemn its interpreters to the depths of despair." *Reaction Molding Techs., Inc. v. Gen. Elec. Co.,* 585 F. Supp. 1097, 1104, 588 F. Supp. 1280 (E.D. Pa. 1984). However, it is the applicable law here and we must give effect to its intent. "One of the principles underlying section 2-207 is neutrality. If possible, the section should be interpreted so as to give neither party to a contract an advantage simply because it happened to send the first or in some cases the last form." *Diamond Fruit Growers, Inc. v. Krack Corp.,* 794 F.2d 1440, 1444 (9th Cir. 1986) (citing JAMES J. WHITE & ROBERT S. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 1-2, at 26-27 (2d ed. 1980)).

¶11 With these principles in mind, we apply UCC § 2-207 to the transaction between the parties. Regarding the parties' initial contract, Rudd agreed at oral argument that the initial agreement consisted of TFC's oral offer to purchase specified products and an acceptance evidenced by Rudd's shipment of the products. This contradicted one of Rudd's arguments in its briefs: that no contract could be formed until the invoice was delivered, as the invoice contained the price term. The UCC also defies this argument; it expressly does not require a price term for the formation of a contract. RCW 62A.2-305. Rather, a contract for the sale of goods "may be made in any manner sufficient to show agreement," RCW 62A.2-204(1), and the parties "can conclude a contract for sale even though the price is not settled." RCW 62A.2-305(1). Where no price is included

in the initial contract, the UCC provides a price: "a reasonable price at the time for delivery." RCW 62A.2-305(1).

¶12 Rudd further conceded at oral argument that its attempt to add additional terms to this initial contract failed because TFC did not consent to the additional terms on the invoice. We agree. The terms on the back of the first invoice were proposals for additions to the contract; because they materially altered the contract terms,[3] they did not become part of the contract under RCW 62A.2-207(2) above.

¶13 Therefore, we are faced solely with the question of whether the invoice terms became a part of the later contracts between the parties. As stated above, Rudd included a term on the back of the invoices limiting the order to the buyer's assent to the additional terms. "Such assent shall be deemed complete if no contrary written notice is sent by purchaser within five (5) days of receipt." Clerk's Papers at 207. While this illustrates Rudd's assumption of TFC's acceptance of the new terms, it does not express that Rudd's acceptance of the offer was *conditional* on TFC's assent to those terms. Therefore, the contract was not formed or governed by route (1) above.

¶14 Indeed, the parties had already formed a contract when each of these invoices was received by TFC, just as they had when the first order was placed and the products shipped—TFC agreed to pay for the products, and Rudd agreed to deliver them. Following UCC § 2-207, the additional terms on the backs of the invoices should therefore be considered proposals for addition to the contract. However, because the terms materially altered the agreement (*see supra* note 3), they could not automatically become a part of the contract. Further, because the parties already had a contract, Rudd could not unilaterally modify the contract based upon TFC's silence. In other words, Rudd could not change the contract by essentially saying to TFC, "Unless you say 'no' within five days, you mean 'yes.'"

---

[3] The official comments to RCW 62A.2-207 clearly state that a clause negating standard warranties, such as that for merchantability or fitness for a particular purpose, materially alters the contract. RCWA 62A.2-207 UCC cmt. 4.

¶15 Because the parties never agreed to the additional terms but conducted themselves in a manner indicating the existence of a contract, the contract's terms are governed by UCC § 2-207(3). Therefore, the contract consisted only of those terms agreed to by the parties and any supplementary terms provided by the UCC.

> Generally, this result [application of UCC § 2-207(3)] is fair because both parties are responsible for the ambiguity in their contract. The parties could have negotiated a contract and agreed on its terms, but for whatever reason, they failed to do so. Therefore, neither party should get its terms. . . . Application of section 2-207(3) is more equitable than giving one party its terms simply because it sent the last form.

*Diamond Fruit,* 794 F.2d at 1444-45.

¶16 Rudd relies on the Washington Supreme Court's decisions in *Puget Sound Financial* and *Mortenson* to support its argument that additional terms in invoices or licensing agreements may become a part of the parties' contract without express assent to those additional terms. However, neither case is applicable here, where the dispute arises out of a contract between merchants for the sale of goods.

¶17 In *Puget Sound Financial,* the Washington Supreme Court held that liability disclaimers on a series of invoices became part of the parties' agreement by examining trade usage, course of dealing, and the "layered contract" analysis under *Mortenson. Puget Sound Fin.,* 146 Wn.2d at 436-38. However, the court in that case was determining the terms of a common-law services contract—not a contract for the sale of goods governed by the UCC. The court itself differentiated its reasoning from that in *Hartwig Farms,* a Division Three case examining additional terms in a contract between merchants for the sale of goods, calling it "a situation wholly distinct from the case before us." *Puget Sound Fin.,* 146 Wn.2d at 443 (citing *Hartwig Farms, Inc. v. Pac. Gamble Robinson Co.,* 28 Wn. App. 539, 625 P.2d 171 (1981)).

¶18 The *Mortenson* court similarly held that liability disclaimers became part of the contract where they were included with a delivered product. *Mortenson,* 140 Wn.2d at 584-85. However, the court expressly declined to apply RCW 62A.2-207, finding that (1) the case was instead controlled by RCW 62A.2-204 (governing how an agreement is made) and (2) the buyer was not a merchant, so RCW 62A.2-207 was not directly on point. *Mortenson,* 140 Wn.2d at 581-82 & n.9. The court did accept a "layered contract" analysis, as Rudd promotes here, but specifically limited its application to RCW 62A.2-204 cases. *Mortenson,* 140 Wn.2d at 584.

¶19 There is no recent Washington case law directly on point, but this case is not unlike *Hartwig Farms,* where Division Three held that a warranty disclaimer included on an invoice sent after a contract was formed was ineffective as a matter of law. *Hartwig Farms,* 28 Wn. App. at 540. In that case, the buyer would order the goods by phone and the seller would include an invoice in his delivery of the goods. *Hartwig Farms,* 28 Wn. App. at 541. The invoice included a warranty disclaimer that had not been negotiated by the parties, and the court ultimately rejected it. *Hartwig Farms,* 28 Wn. App. at 541-43.

¶20 This situation is also highly analogous to that in *Diamond Fruit,* 794 F.2d 1440, where a seller (Metal-Matic) had been supplying tubing to Krack for several years, following the same course of dealing—Krack would send a blanket purchase order to Metal-Matic, who would respond by sending an acknowledgement form and shipping the tubing. The acknowledgement form included both warranty disclaimer and liability limitation terms. While Krack did object to the seller once regarding the terms, Metal-Matic never changed them, and the parties continued to do business. When Krack discovered the tubes were defective, it brought a complaint against Metal-Matic. Metal-Matic responded that, as the additional terms were part of the contract, it was not liable to Krack for any consequential damages.

█ █ ¶21 On review, the Ninth Circuit noted that UCC § 2-207 was intended in part to provide rules of contract formation where the commercial transaction consists of an exchange of forms with differing terms. *Diamond Fruit,* 794 F.2d at 1442-43. Therefore, using the UCC § 2-207 analysis, it held that where the offeror does not assent to the additional terms, but the parties proceed with the transaction as if they have a contract, their performance results in formation of a contract. *Diamond Fruit,* 794 F.2d at 1444. In such a case, the terms of the contract are those on which the parties' forms agree, plus any terms supplied by the UCC. *Diamond Fruit,* 794 F.2d at 1444.

¶22 Under this reasoning, none of Rudd's additional terms printed on the invoice—the warranty disclaimer, the remedy limitation, and the forum clause—are included in its contract with TFC. The trial court was correct to deny Rudd's motion for summary judgment and motion to dismiss for improper venue. We affirm.[4]

HOUGHTON, C.J., and BRIDGEWATER, J., concur.

Review denied at 164 Wn.2d 1006 (2008).

---

[4] Because we find that the trial court was correct to hold that Rudd's choice of forum clause was not part of the contract, we need not examine TFC's argument that Rudd waived the venue issue.