790 A.2d 962 (2002)
347 N.J. Super. 524
Jeffrey RICHARDSON, Plaintiff,
v.
UNION CARBIDE INDUSTRIAL GASES, INC., Praix Air Co., Allianz Insurance Company, American Risk Management, Integrated Systems Engineering Systems Engineering Company, E. Ernest Johnson, Interlake Corp., Barber-Coleman Company, Allen-Bradley, Inc., Fromme Electric Supply Co., Acrison, Inc., Milltronics, Inc., Neutronics, Inc., Drexelbrook Engineering Co., Donaldson, Inc., Selas Furnace Company, Deb Maintenance, Inc., Burlington Equipment Co., Magda Industries, Inc., Thyssen Specialty Steel Inc., Rapat Co., and Jenkins Electric, Inc., Defendants, and
Rage Engineering, Inc., Defendant-Appellant,
v.
Hoeganaes Corporation, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 2002.
Decided February 11, 2002.
John H. Osorio, Cherry Hill, argued the cause for appellant, (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Daniel D. Haggerty, on the brief).
Robert G. Devine, Westmont, argued the cause for respondent, (White and *963 Williams, attorneys; Mr. Devine, of counsel and Chad A. Rutkowski, on the brief).
Before Judges HAVEY, BRAITHWAITE and COBURN.
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
In this appeal, we are required to address whether the "knock-out" rule applies in New Jersey when there are conflicting terms in a contract governed by the Uniform Commercial Code ("UCC"), codified at N.J.S.A. 12A:1-101 to 11-108. The effect of applying the "knock-out" rule is that the conflicting terms do not become part of the parties' contract and the contract "consists of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act." N.J.S.A. 12A:2-207(3). We conclude that the "knock-out" rule applies in New Jersey and affirm the summary judgment granted to defendant Hoeganaes Corporation ("Hoeganaes"), dismissing defendant Rage Engineering Inc.'s ("Rage") cross-claim for indemnification.
Because this appeal arises from the grant of summary judgment, we must view the facts, and all favorable inferences from those facts, in the light most favorable to Rage. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 666 A.2d 146 (1995); Strawn v. Canuso, 140 N.J. 43, 48, 657 A.2d 420 (1995). These are the facts.
Prior to 1988, Hoeganaes operated furnace 2S, which was used for annealing iron powders. In 1988, Hoeganaes undertook the conversion of furnace 2S to a distalloy furnace. Part of the conversion process required the purchase of a powder transporter system or a "dense phase system" to transport iron powder to the input end of the furnace. Hoeganaes purchased the system from Rage after inquiring from two other possible sellers.
On or about September 26, 1988, Rage proposal number 3313 for a transporter system for iron powder and a transfer system for steel powder was submitted to Edward Pirkey, senior project engineer for Hoeganaes. Hoeganaes issued purchase order No. 21584 to Rage for that equipment. The transporter system for iron powder, referred to in the Rage proposal as System I, was installed on furnace 2S.
Subsequently, Rage submitted two more proposals to Hoeganaes. Number 3353 was for target boxes and Number 3375 was for control logic panels. Hoeganaes issued purchase order Number 23952 in response to these two proposals. By May 1989, the conversion of furnace 2S was completed.
The proposals issued by Rage were typed in a letter format addressing the items desired by Hoeganaes. At the base of each page of each proposal, the following language in capital letters was typed: "ANY PURCHASE ORDER ISSUED AS A RESULT OF THIS QUOTE IS MADE EXPRESSLY SUBJECT TO THE TERMS AND CONDITIONS ATTACHED HERETO IN LIEU OF ANY CONFLICTING TERMS PROPOSED BY PURCHASER." The terms and conditions attached to Rage's proposals were standard terms that were sent with every proposal and appeared in standard boilerplate format. The terms and conditions were not discussed during Rage's meetings with Hoeganaes.
At the top of the terms and conditions was a Limitation of Acceptance which stated:
LIMITATION OF ACCEPTANCE. This sale (including all services) is limited to and expressly made conditional on *964 Purchaser's assent to these Terms and Conditions as well as all other provisions contained in any other document to which these Terms and Conditions are attached. Purchaser agrees: (a) These Terms and Conditions ... shall be deemed to supercede and take precedence over all prior writings, representations or agreements regarding this sale; (b) These Terms and Conditions... shall represent our complete agreement; (c) Any inconsistent, conflicting or additional terms or conditions proposed by Purchaser in any order, acceptance or other document or form shall be void and without effect unless Seller shall specifically and expressly accept same in writing; (d) No modification of these Terms and Conditions ... will be affected by Seller's shipment of goods/equipment or the provision of services following receipt of Purchaser's order, acceptance or other document or form containing terms which are inconsistent, conflicting or in addition to these Terms and Conditions ...; and (e) Any acceptance of goods/equipment or services, or payment constitutes an acceptance by Purchaser of these Terms and Conditions ...
The Rage terms and conditions also had an indemnity clause, which stated:
INDEMNITY. Purchaser shall indemnify and hold Seller harmless against and in respect of any loss, claim or damage (including costs of suit and attorneys' fees) or other expense incident to or in connection with: the goods/equipment; the furnishing of design, installation (including site preparation) or other services; processing or use by any person of any goods/equipment or system (including personal injury to the employees of Seller and Purchaser); or Purchaser's violation of any provision of these Terms and Conditions or the provisions of any document to which these Terms and Conditions are attached unless such loss, claim or damage is due solely and directly to the negligence or willful misconduct of Seller.
At the bottom of the purchase orders issued by Hoeganaes the following language in bold face type appeared: "THIS ORDER IS ALSO SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS PAGE[.]" The reverse side of the purchase orders included the following section at the top of the boilerplate terms and conditions section:
1. Compliance with Terms and Conditions of OrderThe terms and conditions set forth below, along with the provisions set forth on the front page hereof, constitute the entire contract of purchase and sale between Buyer and Seller. Any provisions in the Seller's acceptance, acknowledgment or other response to this Order which are different from or in addition to any of the terms and conditions and other provisions of this Order are hereby objected to by Buyer and such different or additional provisions shall not become a part of Buyer's contract of purchase and sale.
Furthermore, the reverse side also contained the following indemnity clause and a clause stating that the purchase order constituted the entire agreement:
14. IndemnificationSeller agrees to indemnify and hold harmless and protect Buyer, its affiliated and subsidiary companies, successors, assigns, customers and users of its products from and against all losses, damages, liabilities, claims, demands (including attorneys fees'), and suits at law or equity that arise out of, or are alleged to have arisen out of, directly or indirectly, any act of omission or commission, negligent or otherwise, of Seller, its sub-contractors, *965 their employees, workmen, servants or agents, or otherwise out of the performance or attempted performance by Seller of this purchase order.
16. This purchase order contains the entire agreement between the parties and the provisions hereof or rights hereunder may be modified or waived only in writing by Buyer's authorized officials. All matters in connection herewith shall be determined under the laws of New Jersey.
Thus, both Rage and Hoeganaes exchanged documents, pertinent here, with conflicting indemnity clauses. Other than as expressed in the boilerplate language, neither side objected to the language in the documents and the contract was performed.
Plaintiff Jeffrey Richardson was an employee of Hoeganaes when he was injured by the explosion of furnace 2S on May 13, 1992. On September 15, 1994, plaintiff filed suit against numerous defendants including Hoeganaes[1] and Rage. Plaintiff alleged that Rage "did design, manufacture, maintain, assemble, inspect, test, sell and/or distribute the systems and facilities design and/or its component parts" for the furnace which caused his injuries. Plaintiff alleged breaches of the Products Liability Act, N.J.S.A. 2A:58-1 to -11, implied and express warranties and negligence. In its answer, Rage cross-claimed against Hoeganaes seeking contractual indemnification. Hoeganaes, in its answer to the cross-claim, denied any right to indemnification arising out of the contract.
On May 15, 1997, Rage filed a motion for summary judgment seeking contractual indemnification from Hoeganaes. Hoeganaes cross-moved for summary judgment seeking dismissal of Rage's cross-claim for contractual indemnity. On August 15, 1997, the motion judge granted Hoeganaes' motion and dismissed Rage's claim for indemnification.
Rage's subsequent motion for reconsideration was denied. Thereafter, plaintiff settled his claims. Rage now appeals from the summary judgment granted to Hoeganaes, dismissing Rage's contractual indemnification claim.
On appeal, Rage contends that the motion judge erred when he applied N.J.S.A. 12A:2-207(3) and found that the parties' contract did not include Rage's indemnity provision. We reject Rage's contention, concluding that the "knock-out" rule applies and that Rage's indemnity clause did not become part of the contract.
As an initial matter, Rage asserts that we must first determine whether Hoeganaes' purchase order constituted an acceptance or a counter-offer. Rage claims that it was an acceptance. Hoeganaes, however, contends that the real issue is whether Rage's proposal even constituted an offer. It argues that Rage's proposal did not constitute an offer. Hoeganaes raises this contention for the first time on appeal.[2] We decline to discuss this issue because, before the motion judge, Hoeganaes took the position that Rage's proposal was an offer and Hoeganaes' response to the offer was an acceptance. The doctrine of judicial estoppel precludes Hoeganaes from maintaining a different position here because its prior position was successfully asserted in obtaining summary *966 judgment dismissing Rage's crossclaim for indemnification. Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 620, 581 A.2d 91 (App.Div.1990); aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991). We also decline to consider this issue because it was not presented to the trial court. See Nieder v. Royal Indem. Ins., 62 N.J. 229, 234, 300 A.2d 142 (1973).

I
The relevant statutory provision is N.J.S.A. 12A:2-207, which provides as follows:
Additional Terms in Acceptance or Confirmation.
(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(a) the offer expressly limits acceptance to the terms of the offer;
(b) they materially alter it; or
(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.
We address first, Rage's second point, which asserts that the "knock-out" rule should not have been applied to its indemnity clause. This issue has not been addressed previously by our courts in a published opinion.
We note that N.J.S.A. 12A:2-207 addresses "additional terms in acceptance" and also uses the language "different" terms. N.J.S.A. 12A:2-207(1). In N.J.S.A. 12A:2-207(2), however, where the standard to determine whether additional terms become part of the parties' contract, the word "different" is not employed.
N.J.S.A. 12A:2-207 is silent on the question of whether "additional or different terms" mean the same thing. N.J.S.A. 12A:2-207(1). There is seemingly no agreement on that question. Northrop v. Litronic Indus., 29 F.3d 1173, 1175 (7th Cir.1994). It is unclear whether the reference to "different" terms in the acceptance, N.J.S.A. 12A:2-207 (1), means that the drafters intended "different" to be treated like "additional" terms under N.J.S.A. 12A:2-207(2).
Comment three of N.J.S.A. 12A:2-207, suggests that both additional and different terms, are governed by N.J.S.A. 12A:2-207(2).[3] However, comment six of *967 N.J.S.A. 12A:2-207 advances the proposition that conflicting terms in exchanged writing must be assumed to be mutually objected to by each party with the result of a mutual "knock-out" of the conflicting terms.[4]
Scholars differ on this subject. One commentator supports the view that the drafting history of the provision indicates that the word "different" was intentionally deleted from the final draft of UCC § 2-207(2) so that different terms would not be treated under that subsection. See D.G. Baird and R. Weisberg, Rules, Standards, and the Battle of the Forms: A Reassessment of § 2-207, 68 Va.L.R. 1217, 1240, n. 61 (1982). Others, however, believe that different equates to additional and assert that the drafting history indicates that the omission of "or different" from § 2-207(2) was a drafting error. John E. Murray, Jr., The Chaos of the "Battle of the Forms:" Solutions, 39 Vand.L.Rev. 1307, 1355 (1986); John L. Utz, More on the Battle of the Forms: The Treatment of "Different" Terms Under the Uniform Commercial Code, 16 U.C.C.L.J. 103, 110-12 (1983).
There are, however, three recognized approaches by the courts to the issue of conflicting terms in contracts under circumstances such as here. Northrop, supra, 29 F.3d at 1178; Daitom Inc. v. Pennwalt Corp., 741 F.2d 1569, 1578 (10th Cir.1984). The majority view is that the conflicting terms fall out and, if necessary, are replaced by suitable UCC gap-filler provisions. See e.g., Ionics v. Elmwood Sensors, Inc., 110 F.3d 184, 189 (1st Cir. 1997) (applying Massachusetts law); Brewster of Lynchburg, Inc. v. Dial Corp., 33 F.3d 355 (4th Cir.1994) (applying Arizona law); Northrop, supra, 29 F.3d at 1178-79 (applying Illinois law); Daitom, supra, 741 F.2d at 1578-80 (applying Pennsylvania law); Westinghouse Electric Corp. v. Nielsons, Inc., 647 F.Supp. 896 (D.Col.1986) (applying Colorado law); Owens-Corning Fiberglas Corp. v. Sonic Dev. Corp., 546 F.Supp. 533 (D.Kan.1982) (applying Kansas law); Lea Tai Textile Co. Ltd. v. Manning Fabrics, Inc., 411 F.Supp. 1404 (S.D.N.Y.1975); St. Paul Structural Steel Co. v. ABI Contracting, Inc., 364 N.W.2d 83 (N.D.1985) (applying Minnesota law); Hartwig Farms, Inc. v. Pacific Gamble Robinson Co., 28 Wash.App. 539, 625 P.2d 171 (1981); S.C. Gray, Inc. v. Ford Motor Co., 92 Mich.App. 789, 286 N.W.2d 34 (1979).
The minority view is that the offeror's terms control because the offeree's different terms cannot be saved by N.J.S.A. 12A:2-207(2), because that section applies only to additional terms. Valtrol, Inc. v. General Connectors Corp., 884 F.2d 149, 155 (4th Cir.1989) (applying South Carolina law); Reaction Molding Technologies, Inc. v. General Electric Co., 588 F.Supp. 1280, 1289 (E.D.Pa.1984).
The third view assimilates "different" to "additional" so that the terms of the offer prevail over the different terms in the acceptance only if the latter are materially different. This is the least adopted approach. Mead Corp. v. McNally-Pittsburg Mfg. Corp., 654 F.2d 1197 (6th Cir.1981) *968 (applying Ohio law); Steiner v. Mobil Oil Corp., 20 Cal.3d 90, 141 Cal.Rptr. 157, 569 P.2d 751 (1977).
We conclude that the majority approach, the "knock-out" rule, is preferable and should be adopted in New Jersey. We reach this conclusion because the other approaches are inequitable and unjust and run counter to the policy behind N.J.S.A. 12A:2-207, which addresses a concern that existed at common law. Daitom, supra, 741 F.2d at 1579-80.
At common law, there could be no meeting of the minds and thus no contract, unless there was agreement on all the terms of the contract. 2 Williston on Contracts § 6:17 (Lord ed., 4th ed.1991). This was the "mirror-image" rule, which Article 2 of the UCC jettisoned by recognizing the existence of a contract even though certain terms remain in conflict or are unresolved. Northrop, supra, 29 F.3d at 1174; Daitom, supra, 741 F.2d at 1578. This change was meant to facilitate the completion of large-scale business transactions and practically is a necessity, in light of the way the American economy functions today. See Leonard Pevar Co. v. Evans Products Co., 524 F.Supp. 546, 551 (D.Del.1981) (UCC is "intended to change the common law in an attempt to conform contract law to modern day business transactions").
N.J.S.A. 12A:2-207 was enacted to reform the common law mirror-image rule and reject the last-shot doctrine which accorded undue advantage to the mere order in which forms were sent. See J.J. White and R.S. Summers, Uniform Commercial Code, § 1-2, at 25 (2d ed.1980). Our adoption of the "knock-out" rule advances the goal of reformation of the common law mirror-image rule.
The motion judge recognized that each party created its own forms with its own terms that conflicted, yet still proceeded to transact business without objection. The judge noted:
The truth is, and this really is the truth, what's happening is some little person some place writing these littletrying to plan it out, trying to conflict these things out, but the business people are out there delivering and taking money. And if the people really want to really get into all of this, then they should have taken their stuff away and they should have said, ooh, you know, weyou know, this is real here and, sorry, I'm not going to be able to take your check and, sorry, you're not going to be able to keep the stuff, but they're not doing that. They're just playing a little game with forms.
In granting the motion for summary judgment, the judge implicitly adopted the "knock-out" rule. An approach other than the knock-out rule for conflicting terms would result in Rage, or any offeror, always prevailing on its terms solely because it sent the first form. That is not a desirable result, particularly when the parties have not negotiated for the challenged clause.

II
Now we address Rage's first point. Rage asserts that the motion judge erred in analyzing the matter under N.J.S.A. 12A:2-207(3) rather than N.J.S.A. 12A:2-207(2). We are satisfied that under either analysis the result is the same and, therefore, summary judgment was properly granted to Hoeganaes.
N.J.S.A. 12A:2-207(2) sets forth the standard to determine if additional terms of an acceptance becomes part of the contract. Daitom, supra, 741 F.2d at 1578. The additional terms between merchants become part of the contract unless:
(a) the offer expressly limits acceptance to the terms of the offer; *969 (b) they materially alter it; or
(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

[N.J.S.A. 12A:2-207(2).]
Applying this section here leads inescapably to the conclusion that Rage's indemnity clause did not become part of the contract. Although Rage's offer specifically limited acceptance to the terms of its offer, Hoeganaes' acceptance materially altered Rage's offer with respect to the issue of indemnification. Additionally, Hoeganaes' acceptance objected to any terms or conditions of the Rage offer that were different from or in addition to any of the terms of its own acceptance.
Moreover, comment six to N.J.S.A. 12A:2-207, which expresses the "knock-out" rule that we addressed earlier in this opinion, supports the conclusion that Rage's indemnity clause did not become part of the contract. Thus, N.J.S.A. 12A:2-207(2) offers no support for Rage's position.
Applying N.J.S.A. 12A:2-207(3) leads to the same result. Here, the contested provision addressed indemnity and only became relevant after plaintiff was injured, some three years after the conversion of the furnace was completed. Pursuant to N.J.S.A. 12A:2-207(3), the conduct of the parties recognizes the existence of a contract and the "terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act." (Emphasis added). Because the parties' writings disagree on indemnity, that term did not become part of the contract.
Affirmed.
NOTES
[1] Plaintiff's claim against Hoeganaes, his employer, was for discovery purposes only.
[2] While this point was not raised below, this fact is not noted in Hoeganaes' brief. For this reason, the brief is in violation of R. 2:6-2(a)(1) which provides, in relevant part, that "It is mandatory that any point not presented below be so indicated by including in parenthesis a statement to that effect in the point heading."
[3] Comment three provides:

Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party. If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time.
[emphasis added.]
[4] The relevant portion of comment six states:

Where clauses on confirming forms sent by both parties' conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2).