**FLENDER CORPORATION, Appellee,**

v.

**TIPPINS INTERNATIONAL, INC.,**
**formerly known as Tippins**
**Incorporated, Appellant.**

Superior Court of Pennsylvania.

Argued March 26, 2003.
Filed Aug. 18, 2003.

Patrick K. Cavanaugh, Pittsburgh, for appellant.

Nicholas D. Krawec, Pittsburgh, for appellee.

BEFORE: JOHNSON, KLEIN, and POPOVICH, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Tippins International, Inc., appeals the trial court's order denying its motion to compel arbitration under the terms of a commercial contract. The trial court determined that the arbitration clause on which Tippins relies was merely a part of its offer of purchase and never became a part of the parties' contract. The court determined, in addition, that the parties formed a contract through course of conduct pursuant to section 2207(c) of the Pennsylvania Commercial Code that did not include an arbitration provision. Upon review, we conclude that the trial court did not commit reversible error. Consequently, we affirm the court's order.

¶ 2 This matter arose out of a "battle of the forms" in which the two contracting parties attempted to impose differing terms on the purchase of goods. Tippins, a Pittsburgh company then engaged in the construction of a steel rolling mill in the

Czech Republic, sought to purchase gear drive assemblies from Flender Corporation for installation at the new facility. In January 1998, Tippins mailed a purchase order to Flender specifying terms of sale. The order limited the form in which Flender could acknowledge and accept Tippins's offer and required that the parties' disputes under any resulting contract be submitted to arbitration. The order stated Tippins's terms as follows: "Tippins['s] purchase order is expressly limited to acceptance of 'Standard General Conditions Nova Hut Purchase Order' and special conditions of purchase, which take precedence over any terms and conditions written on the back of the purchase order." The "Standard General Conditions Nova Hut Purchase Order" included the arbitration clause at issue here, requiring that all claims or disputes arising out of the contract must be submitted to arbitration before the International Chamber of Commerce in Vienna, Austria, and would be governed by Austrian law. Moreover, the order limited the form of Flender's acceptance as follows: "AS PART OF THIS OFFER TO PURCHASE GOODS OR SERVICES THE ATTACHED ACKNOWLEDGMENT FORM OF THE PURCHASE ORDER "MUST" BE SIGNED AND RETURNED.... [NEITHER] TIPPINS NOR ANY OF ITS AFFILIATES RECOGNIZES ANY OTHER DOCUMENT AS AN ACKNOWLEDGMENT."

¶ 3 Flender did not sign the attached acknowledgment form or issue any other written acceptance of Tippins's offer, but instead manufactured and shipped the finished drive assemblies. Flender's invoice, which accompanied the drive assemblies, provided "Conditions of Sale and Delivery" that attached conditions to Flender's acceptance of Tippins's order. Flender's conditions provided as follows:

[T]hese terms and conditions will govern all quotations covering purchase orders for and sales of Seller's products and are the sole terms and conditions on which the order of buyer will be accepted. Seller's acceptance of Buyer's order will not constitute an acceptance of printed provisions on Buyer's order form which are inconsistent with or additional to these terms and conditions unless specifically accepted in writing by the Seller. Buyer's agreement and Buyer's form containing inconsistent or material terms shall not be deemed a specific objection to any terms hereof.

The invoice did not, however, require that Tippins accept these additional terms in order for the parties to form a binding contract.

¶ 4 The invoice also provided a mechanism for dispute resolution. The dispute resolution clause required that "exclusive jurisdiction and venue of any dispute arising out of or with respect to this Agreement or otherwise relating to the commercial relationships of the parties shall be vested in the Federal and/or State Courts located in Chicago, Illinois ...." Tippins accepted and installed the gear drives but, subsequently, failed to pay the balance due on the shipment. Flender then commenced this action in the Court of Common Pleas of Allegheny County seeking to recover an amount outstanding of $238,663.15, plus $76,372.16 in service charges.

¶ 5 In the trial court, Tippins filed preliminary objections to Flender's complaint asserting, pursuant to Civil Rule 1028(a)(6), that the parties' contract of sale required that Flender submit its claim to arbitration in Vienna, Austria. The trial court, the Honorable Ronald W. Folino, denied Tippins's objections, reasoning that the arbitration clause on which Tippins relied had been "knocked out" because it

was materially different from the dispute resolution clause in Flender's invoice. Trial Court Opinion, 9/9/02, at 4–5. The court concluded, in addition, that because both parties proceeded with the transaction as if they had a contract, although neither party had accepted the other's terms, the only contract they could be deemed to have was established by course of conduct under section 2207(c) of the Pennsylvania Commercial Code. Trial Court Opinion, 9/9/02, at 4. Because such an implied contract was, per force, silent on the issue of dispute resolution, it posed no impediment to litigation of Flender's complaint in the Court of Common Pleas. Tippins then filed this interlocutory appeal of right pursuant to 42 Pa.C.S. section 7320(a)(1) and Appellate Rule 311(a)(8).

¶ 6 Tippins raises the following questions for our review:

A. Whether the trial court erred as a matter of law in holding that a contract had been formed by the conduct of the parties under 13 Pa.C.S. § 2207(c), rather than by the writings of the parties, in the form of Tippins'[s] purchase order and Flender's invoice, under 13 Pa.C.S. § 2207(a)?

B. Whether 13 Pa.C.S. § 2207(b) contemplates "additional or different terms" referenced in 13 Pa.C.S. § 2207(a) for a determination of whether such additional or different terms should be included in the final agreement?

C. Whether a contract formed under 13 Pa.C.S. § 2207(a) retains the terms and conditions of the offer under 13 Pa.C.S. § 2207(b)(1), where an offer expressly limits acceptance to the specific terms and conditions of the offer?

D. Whether the trial court erred as a matter of law in determining that

no valid agreement to arbitrate existed between the parties?

Brief for Appellant at 4. Upon review, we note that Tippins's questions "A," "B," and "C" appear to address points of argument in support of question "D," and are properly considered in connection with it. We note also that Tippins's argument is not divided so as to correspond with the foregoing questions. Such a lack of correspondence violates the Rules of Appellate Procedure and burdens our ability to respond to Tippins's questions as posed. *See* Pa. R.A.P. 2119(a) (requiring that "argument shall be divided into as many parts as there are questions to be argued").

¶ 7 Flender posits a counter-statement of the questions presented which restates the issue for consideration as a single question:

Did the Trial Court err in ruling that neither Flender's nor Tippins' forum selection provision became a part of their contract thus finding that the appropriate forum for Flender to bring this action was in Pennsylvania?

Brief for Appellee at 1. All parties agree that Commercial Code section 2207 and cases applying it are dispositive of the issue before us. They disagree sharply, however, concerning which subsections apply and whether the difference in provisions governing dispute resolution apparent in the parties' respective forms served to "knock out" both provisions. Accordingly, we shall determine whether the trial court erred in interpreting section 2207 to conclude that Tippins's arbitration provision was, indeed, "knocked out" and that the contract the parties formed did not compel arbitration.

■■■■ ¶ 8 In this case, the trial court denied Tippins's preliminary objections. "While an order denying preliminary objections is generally not appealable,

'[t]here exists ... a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration.'" *Midomo Co., Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 184 (Pa.Super.1999). Our review of such an order "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Id.* at 186.

■ ¶ 9 Where, as here, one party to an agreement seeks to prevent another from proceeding to arbitration, "the trial court's inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision." *Id.* at 188. In this case, the trial court applied the "knockout rule" derived from the Uniform Commercial Code to determine that the parties had not entered a valid agreement to arbitrate because the respective dispute resolution clauses of the parties' forms differed and therefore cancelled one another. Trial Court Opinion, 9/9/02, at 4. The court concluded as well that the reservations each party attached to acceptance of the offer also cancelled each other and defeated formation of a written contract. Trial Court Opinion, 9/9/02, at 4.

¶ 10 Tippins asserts, contrary to the court's conclusion, that because Flender did not expressly reject the terms of Tippins's purchase order, the parties formed a written contract under section 2207(a), incorporating the purchase order's terms. Brief for Appellant at 8, 15. Tippins argues that different terms supplied in Flender's invoice were precluded by operation of section 2207(b) and therefore could not operate to "knock out" its own contrary terms. Brief for Appellant at 9. Tippins concludes accordingly that the parties formed a written contract that incorporated the arbitration clause at issue here. Brief for Appellant at 9.

¶ 11 Tippins's argument poses a novel question in Pennsylvania, as neither our Supreme Court nor we have determined when a written contract may be formed based on differing terms in competing writings, the so-called "battle of the forms." Nor have our courts considered whether, as the trial court concluded, the "knockout rule" is properly applied to cancel conflicting terms in competing writings, thereby creating a contract out of the terms on which the parties actually agree. The text of Section 2207 and decisions of the federal courts predicting adoption of the "knockout" rule in Pennsylvania provide guidance on these questions.

¶ 12 Section 2207 provides, in its entirety, as follows:

**§ 2207. Additional terms in acceptance or confirmation**

**(a) General rule.**—A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

**(b) Effect on contract.**—The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

  (1) the offer expressly limits acceptance to the terms of the offer;

  (2) they materially alter it; or

  (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

**(c) Conduct establishing contract.—** Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

13 Pa.C.S. § 2207.

■ ¶ 13 Section 2207 provides a remedy for the shortcomings of common law contract theory, which required parties entering a contract to reach agreement on all material terms. *See Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F.Supp.2d 643, 652 (E.D.Pa.2002) ("Under the common law, a document qualifying as an offer could only be 'accepted' by a second document expressing acceptance on terms identical to the offer."). In the absence of such "mirror-image" correspondence between the terms, the offeree's "acceptance" would be deemed a mere counter-offer subject to acceptance by the original offeror. *See Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1578 (10th Cir.1984) (interpreting Pennsylvania law). Because this "mirror-image rule" did not comport with the typical course of dealing in business transactions, the American Law Institute promulgated section 2207 as part of the Uniform Commercial Code (numbered 2–207) and recommended its adoption by the states. *See Reilly*, 206 F.Supp.2d at 653 n. 4. Pennsylvania has since adopted that provision.

■ ¶ 14 Section 2207(a) provides that an expression of acceptance may operate to accept an offer even if it contains terms additional to or different from those stated in the offer. *See id.* (citing section 2207(a)). Thus, mere non-conformance between competing forms will not undermine the formation of a contract, so long as the parties demonstrate their mutual assent to essential terms. *See Daitom*, 741 F.2d at 1576. Under such circumstances, a written contract is deemed to exist consisting of the essential terms of the offer, to which the offeree's response has established its agreement. The formation of a written contract is defeated only where the offeree responds with different or additional terms and "explicitly communicate[s] his or her unwillingness to proceed with the transaction" unless the offeror accepts those terms. *See id.* (citing *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161 (6th Cir. 1972)).

■ ¶ 15 In this case, Flender, through its course of conduct and subsequent invoice, accepted the essential terms of Tippins's offer. Although the invoice provided terms that did not appear in Tippins's offer, Flender did not communicate its unwillingness to proceed without them or condition the transaction on Tippins's acceptance of those terms. *See* 13 Pa.C.S. § 2207(a). Consequently, we agree with Tippins that the parties did form a written contract under section 2207(a). However, the content of that contract, beyond essential terms, and whether it includes the arbitration clause on which Tippins relies, remain to be determined.

■ ¶ 16 As noted, Flender, in its invoice, included terms that were either *additional to* or *different from* the terms of the offer embodied in Tippins's purchase order. The treatment of *additional* terms, i.e., those for which no comparable provisions appear in the offer, is addressed in section 2207(b). Under that section "*additional* terms become part of the contract unless: (1) the offer expressly limits acceptance to the terms of the offer; (2) the inserted term materially alters the offer;

or (3) notification of objection to the inserted terms has been given or is given within a reasonable time." *Reilly Foam*, 206 F.Supp.2d at 652–53 (citing 13 Pa.C.S. § 2207(b)(1)-(3)). If one of these circumstances occurs, the terms of the offer control and the additional terms will be treated merely as proposals for incorporation into the contract subject to the offeror's acceptance. *See Daitom*, 741 F.2d at 1578. If, however, none of those circumstances occurs, the offeree's acceptance controls and the additional terms become part of the parties' contract. *See id.*

¶ 17 Nevertheless, the fate of *different* terms, i.e., those for which a comparable provision does appear in the offer, is substantially less clear. Nowhere in its text does section 2207(b) address them; rather, it confines its discussion to *additional* terms. *See* 13 Pa.C.S. 2207 ("The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become a part of the contract . . . ."). *See also Daitom*, 741 F.2d at 1578 ("Section [2207(b)] is silent on the treatment of terms stated in the acceptance that are different[.]"); *Reilly Foam*, 206 F.Supp.2d at 653 ("Section 2207(b) does not directly address different terms in an acceptance[.]"). Thus, the language of the statute provides little guidance on the question of which set of terms controls when an offeree's acceptance proposes terms different from those included in the offer. *See Daitom*, 741 F.2d at 1578 ("It is unclear whether different terms in the acceptance are intended to be included under the aegis of additional terms in § [2207(b)] and, therefore, fail to become part of the agreement if they materially alter the contract.").

¶ 18 This question of whether different terms are to be treated as additional terms under section 2207(b) has divided Commercial Code scholars White and Summers and prompted courts to adopt competing majority and minority views. In *Reilly Foam*, The Honorable Berle Schiller, formerly a distinguished member of this Court, now a federal trial judge, cogently explained these competing schools of thought:

> The minority view permits the terms of the offer to control. Because there is no rational distinction between additional terms and different terms, both are handled under § 2207(b). For support, advocates of this position point to Official Comment 3: "Whether or not *additional or different* terms will become part of the agreement depends upon the provisions of subsection [b]." Professor Summers, the leading advocate of the minority rule, reasons that offerors have more reason to expect that the terms of their offer will be enforced than the recipient of an offer can hope that its inserted terms will be effective. *See* JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 1–3 at 35 (5th ed.2000). The offeree at least had the opportunity to review the offer and object to its contents; if the recipient of an offer objected to a term, it should not have proceeded with the contract. *See id.*

*Reilly Foam*, 206 F.Supp.2d at 653 (internal citations and footnote omitted). This approach treats "different" terms as "additional" terms addressed in section 2207(b), *see Daitom*, 741 F.2d at 1579, and is the approach advocated by Tippins in this case, *see* Brief for Appellant at 16–21.

¶ 19 The alternate approach, recognized as preferable by the federal courts in both *Daitom* and *Reilly Foam*, is known as the "knockout" rule, so called because conflicting terms in the offer and acceptance cancel one another, i.e., are "knocked out." "Different" terms are not treated as "additional" terms for disposition under section

2207(b), and section 2207(b) is limited to its express language.

> Under this view the offeree's form is treated only as an acceptance of the terms in the offeror's form which did not conflict. The ultimate contract, then, includes those non-conflicting terms and any other terms supplied by the U.C.C., including terms incorporated by course of performance (§ 2–208), course of dealing (§ 1–205), usage of trade (§ 1–205), and other "gap fillers" or "off-the-rack" terms (e.g., implied warranty of fitness for particular purpose, § 2–315).

*Daitom,* 741 F.2d at 1579. In *Reilly Foam,* Judge Schiller explained the pragmatic basis for this approach:

> This approach recognizes the fundamental tenet behind U.C.C. § 2207: to repudiate the "mirror-image" rule of the common law. One should not be able to dictate the terms of the contract merely because one sent the offer. Indeed, the knockout rule recognizes that merchants are frequently willing to proceed with a transaction even though all terms have not been assented to. It would be inequitable to lend greater force to one party's preferred terms than the other's. As one court recently explained, "An approach other than the knock-out rule for conflicting terms would result in . . . [ ] any offeror . . . [ ] always prevailing on its terms solely because it sent the first form. That is not a desirable result, particularly when the parties have not negotiated for the challenged clause." *Richardson v. Union Carbide Indus. Gases, Inc.,* 347 N.J.Super. 524, 790 A.2d 962, 968 (N.J.Super.Ct.App.Div.2002).

*Reilly Foam,* 206 F.Supp.2d at 653–54. Professor White advocates this approach as the most fair and consistent with the purposes of section 2207. *See Daitom,* 741 F.2d at 1579 (citing JAMES J. WHITE &

ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, § 1–2 at 29 (2d ed.1980)). It has now been adopted by a strong majority of U.S. jurisdictions that have considered the issue, and the federal courts have predicted its adoption in others. *See JOM, Inc. v. Adell Plastics, Inc.,* 193 F.3d 47, 54 (1st Cir.1999) (ascribing "knockout" rule to law of Maine and Maryland); *Ionics v. Elmwood Sensors, Inc.,* 110 F.3d 184, 188–189 (1st Cir.1997) (applying Massachusetts law); *Northrop Corp. v. Litronic Indus.,* 29 F.3d 1173, 1178 (7th Cir.1994) (describing this approach as "majority rule" and predicting Illinois would adopt "knockout" rule); *Owens–Corning Fiberglas Corp. v. Sonic Dev. Corp.,* 546 F.Supp. 533, 538 (D.Kan.1982) (applying Kansas law); *Armco Steel Corp. v. Isaacson Structural Steel Co.,* 611 P.2d 507, 518 & n. 30 (Alaska 1980); *Southern Idaho Pipe & Steel Co. v. Cal–Cut Pipe & Supply, Inc.,* 98 Idaho 495, 567 P.2d 1246, 1254–55 (1977); *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.,* 177 Ind.App. 508, 380 N.E.2d 571, 578 (1978); *S.C. Gray, Inc. v. Ford Motor Co.,* 92 Mich.App. 789, 286 N.W.2d 34, 41–42 (1979); *St. Paul Structural Steel Co. v. ABI Contracting, Inc.,* 364 N.W.2d 83, 86 (N.D.1985) (applying Minnesota law); *Richardson v. Union Carbide Indus. Gases, Inc.,* 347 N.J.Super. 524, 790 A.2d 962, 968 (App.Div.2002); *Gardner Zemke Co. v. Dunham Bush, Inc.,* 115 N.M. 260, 850 P.2d 319, 325–26 (1993); *Lory Fabrics, Inc. v. Dress Rehearsal, Inc.,* 78 A.D.2d 262, 434 N.Y.S.2d 359, 363 (N.Y.App.Div. 1980); *Superior Boiler Works v. R.J. Sanders, Inc.,* 711 A.2d 628, 636 (R.I.1998); *Hartwig Farms, Inc. v. Pacific Gamble Robinson Co.,* 28 Wash.App. 539, 625 P.2d 171, 174 (1981). In addition, the United States Court of Appeals for the Tenth Circuit and the United States District Court for the Eastern District of Pennsylvania have both predicted adoption of the "knockout" rule by the Pennsylvania Su-

preme Court. *See Daitom, Inc.*, 741 F.2d at 1579–80; *Reilly Foam*, 206 F.Supp.2d at 653–55.

■ ¶ 20 Flender urges us to apply the "knockout" rule in this case. Brief for Appellee at 11. Upon review of the substantial authority, *supra*, supporting application of the "knockout" rule, coupled with the cogent discussions provided by the courts in *Daitom* and *Reilly Foam* predicting its adoption in Pennsylvania, we now join the majority of courts that have considered the issue in declaring that differing terms between a section 2207 offer and acceptance are properly subject to the "knockout" rule. This approach finds support in the pragmatic considerations observed in *Reilly Foam*, 206 F.Supp.2d at 653–54, and in the plain language of section 2207.

■ ¶ 21 As we have discussed, the language of section 2207(b), under the auspices of which adherents of the minority rule would provide the same treatment to both "different" and "additional" terms, does not address "different" terms. *See Daitom*, 741 F.2d at 1578 ("Section [2207(b)] is silent on the treatment of terms stated in the acceptance that are different[.]"). Because section 2207(a) makes express reference to "different" and "additional" terms, the reference in subsection (b) only to "additional" terms is significant. As our Supreme Court has recently observed, "although 'one is admonished to listen attentively to what a statute says[;] one must also listen attentively to what it does not say.' " *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 788 A.2d 955, 962 (2001) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L.Rev. 527, 536 (1947)). Thus, our courts have long recognized that "where [in a statute] certain things are specifically designated, all omissions should be under-

stood as exclusions." *Strunack v. Ecker*, 283 Pa.Super. 585, 424 A.2d 1355, 1357 (1981) (*rev'd on other grounds*, 496 Pa. 290, 436 A.2d 1187 (1981)). We are, therefore, unable to insert language into a statute that the legislature, or in this case, the framers of the Uniform Commercial Code, failed to supply. *See Key Sav. & Loan Ass'n, v. Louis John, Inc.*, 379 Pa.Super. 226, 549 A.2d 988, 991 (1988). In this case, the minority approach and the position espoused by Tippins would effectively require that we do exactly that. Consequently, we find both untenable.

■ ¶ 22 Applying the "knockout" rule espoused in the majority approach to the facts before us, it is apparent that the arbitration clause upon which Tippins relies is not part of the parties' contract. The dispute provision in Flender's acceptance, requiring resolution of the parties' disagreements in state or federal courts in Chicago, is clearly at odds with and quite "different" from the clause in Tippins's offer requiring arbitration of disputes before the International Chamber of Commerce in Vienna. By operation of the rule we adopt today, those provisions are both, quite clearly, "knocked out." Neither became a part of the parties' contract. Accordingly, the trial court did not err in refusing to compel arbitration in response to Tippins's preliminary objections.

¶ 23 For the foregoing reasons, we affirm the trial court's order.

¶ 24 Order **AFFIRMED.**