**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1647-24

YERUCHOM FISHEL
KOSLOWITZ,

    Plaintiff-Appellant,

v.

LIEBA NECHAMA ROTHSTEIN,

    Defendant-Respondent.

_____

        Argued December 16, 2025 – Decided March 26, 2026

        Before Judges Rose and Torregrossa-O'Connor.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FD-15-0843-20.

        Eliana T. Baer argued the cause for appellant (Fox Rothschild LLP, attorneys; Eliana T. Baer, of counsel and on the briefs).

        Laura Guinta Gencarelli argued the cause for respondent (Sarno Da Costa D'Aniello Maceri Webb LLC, attorneys; Angelo Sarno, of counsel and on the brief; Laura Guinta Gencarelli and Lydia LaTona, on the brief).

PER CURIAM

In this non-dissolution matter,[1] between plaintiff Yeruchom F. Koslowitz and defendant Lieba N. Rothstein, plaintiff appeals from three Family Part orders: a January 8, 2025 order denying reconsideration of an October 17, 2024 order appointing a non-rabbinic arbitrator to decide the parties' disputes under their marital settlement agreement (MSA); and paragraph seven of a January 18, 2024 order establishing the methodology of appointing a successor arbitrator after the previous arbitrator was removed for failure to maintain a proper arbitration record and recording of the proceedings. For the reasons that follow, we conclude plaintiff is judicially estopped from challenging the January 18, 2024 order and, because his remaining contentions were not raised before the trial court, we decline to address them with limited exceptions where we conclude they lack merit. We therefore affirm.

---

[1] The parties were never married in a secular proceeding and, as such, the matter was assigned to the "FD" (non-dissolution) Family Part docket.

A-1647-24

## I.

We summarize the pertinent facts and events from the voluminous record provided on appeal. In 2012, the parties were married in an Orthodox Jewish ceremony. Two children were born of the marriage in 2013 and 2015.

Two years after their second child's birth, the parties obtained a Jewish divorce, known as a "get" and executed the MSA on August 25, 2017. In Article XII, the parties agreed to arbitrate "any disagreement between them . . . prior to seeking the [c]ivil [c]ourt's intervention." Article XII specified the parties agreed to appoint Rabbi Yitzchok Herszaft[2] as arbitrator "temporarily just for the purpose of finalizing th[e MSA]" and "pursue and cooperate to agree on a permanent [a]rbitrator." The same article also states if the parties did not agree upon the selection of a permanent arbitrator within three months, Rabbi "Herszaft w[ould] have the sole discretion of choosing another permanent arbitrator." The parties further agreed if the arbitrator determined a Bais Din – the Hebrew term for a rabbinical court – must adjudicate the parties' dispute, the arbitrator would select the Bais Din, but only the Bais Din was empowered to decide whether the dispute could be "adjudicat[ed] in the secular court." The

---

[2] Although in Article XII Rabbi Herszaft is referenced as Reb Herszaft, most often in the record he is referenced as Rabbi Herszaft. We therefore use "Rabbi" for consistency.

A-1647-24

parties also waived their right to adjudication in court pursuant to <u>Fawzy v. Fawzy</u>, 199 N.J. 456 (2009).

The parties thereafter executed multiple arbitration agreements appointing various arbitrators. In summary, on September 18, 2017, the parties signed their first arbitration agreement appointing Rabbi Ari Marburger as arbitrator. Apparently, sometime before 2020, Rabbi Marburger designated Rabbi Leib Landesman to assist the parties. For reasons that are not germane to this appeal, following litigation in the Family Part, on June 17, 2020, the parties consented to the designation of Rabbi Landesman as arbitrator. The next day, the parties signed their second arbitration agreement. In that agreement, the parties assented to Rabbi Landesman's ability to select other rabbis to assist him.

On January 18, 2021, the parties executed another agreement appointing Rabbi Dovid Markin as arbitrator. On March 8, 2021, Rabbi Markin issued an arbitration award permitting defendant to relocate to Far Rockaway, New York with the children.

Protracted litigation ensued in the Family Part, regarding Rabbi Markin's actions as arbitrator. On January 18, 2024, the court vacated the March 8, 2021 award, finding Rabbi Markin failed to maintain a proper arbitration record and recording of the proceedings pursuant to <u>Fawzy</u> and <u>Rule</u> 5:3-8. The court

ordered the parties to select a new arbitrator, but further determined, if they failed to do so within thirty days, the court would select an arbitrator or Bais Din from options provided by the parties. The court stated, "The arbitrator chosen shall be familiar with the chosen education and religious upbringings of the children," but did not specify selection criteria. The parties failed to select an arbitrator.

In July 2024, plaintiff moved to enforce the January 18, 2024 order. Defendant then proposed four arbitrators, one of whom was Robert Kornitzer, Esq., a practicing attorney.

Plaintiff opposed defendant's selections, claiming Kornitzer was an "expensive attorney[] from up north," who was unfamiliar with the children's community and their "Ultra Orthodox upbringing." Plaintiff proposed ten arbitrators, including Rabbi Herszaft. Notably, plaintiff did not assert Rabbi Herszaft should select an arbitrator.

In October 2024, another Family Part judge appointed Kornitzer as arbitrator. In her October 15, 2024 letter decision, the judge noted the January 18, 2024 order, which "complement[ed]" the MSA, did not require selection of a Bais Din, or that the arbitrator "be part of the same religious community" as

the parties. Instead, the order mandated only that "the [a]rbitrator be familiar with the education and religious upbringings of the children."

Plaintiff moved for reconsideration, claiming the court denied "Herszaft the opportunity to appoint an arbitrator." In the alternative plaintiff sought an arbitrator who was "from the 'Chareidi' Orthodox community."

Following oral argument on January 8, 2025, the judge issued an oral decision and memorializing order denying plaintiff's motion. The judge found no reason to disturb her initial decision that Kornitzer was qualified to serve as arbitrator under the January 18, 2024 order.

On appeal, plaintiff argues the Family Part's appointment of a non-rabbinic arbitrator: violated the MSA and arbitration agreement, which empowered Rabbis Herszaft and Marburger to select Rabbi Markin's replacement; interfered with plaintiff's free exercise of religion and parental autonomy; and "implicate[d] the religious question doctrine." All of plaintiff's contentions, other than that pertaining to Rabbi Herszaft – which was first raised on plaintiff's reconsideration motion – are raised for the first time on appeal.

## II.

Our review of Family Part orders is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Appellate courts accord particular deference to the

Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). "We will reverse only if we find . . . trial judge[s] clearly abused [their] discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). Likewise, we review the court's decision on a reconsideration motion for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). However, "all legal issues are reviewed de novo," Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017), including the interpretation of an MSA, Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020), and arbitration agreements, Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020).

"Judicial estoppel operates to bar a party from asserting a position contrary to and inconsistent with one previously asserted." Fineberg v. Fineberg, 309 N.J. Super. 205, 216 (App. Div. 1998) (citing Cummings, 295 N.J. Super. at 385). Judicial estoppel precludes a party from advocating "a position contrary to a position it successfully asserted in the same or a prior proceeding." Ali v. Rutgers, 166 N.J. 280, 287 (2000) (quoting Kimball Int'l,

7

Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000)). A position is considered successfully asserted if "it has helped form the basis of the court's final decision." Adams v. Yang, 475 N.J. Super. 1, 9 n.2 (App. Div. 2023). "At the heart of the doctrine is protection of the integrity of the judicial process." Bhagat v. Bhagat, 217 N.J. 22, 37 (2014).

We will reject a party's appellate arguments when they contradict the party's successfully maintained trial position. See Richardson v. Union Carbide Indus. Gases, Inc., 347 N.J. Super. 524, 529-30 (2002). We acknowledge, "[j]udicial estoppel is an extraordinary remedy," which "should be invoked only to prevent a miscarriage of justice." Bhagat, 217 N.J. at 37. For example, our Supreme Court has declined to invoke the doctrine "unless a court has accepted the previously advanced inconsistent position and the party advancing the inconsistent position prevailed in the earlier litigation." Ibid. When warranted, however, the doctrine should be applied. Ibid.

In the present matter, the Family Part granted plaintiff's application to compel a new arbitrator pursuant to the January 18, 2024 order. When he filed his motion, plaintiff did not challenge the court's methodology. Although the trial court appointed an arbitrator proposed by defendant, plaintiff sought enforcement under the same order he now claims was flawed. Accordingly,

plaintiff's application "helped form the basis of" Kornitzer's October 15, 2024 appointment. Adams, 475 N.J. Super. at 9 n.2. We conclude it would be unjust to entertain plaintiff's newly minted attack on his previously held position. See Bhagat, 217 N.J. at 37.

We therefore need not consider plaintiff's contentions that the January 18, 2024 order violated the terms of the MSA and present arbitration agreement. For the sake of completeness, however, we have reviewed de novo the MSA and arbitration agreement, and conclude plaintiff's contentions lack sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), beyond the brief comments that follow.

Matrimonial settlement agreements are governed by basic contract principles and, as such, courts should discern and implement the parties' intentions. J.B. v. W.B., 215 N.J. 305, 326 (2013). The same is true of arbitration agreements. Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017). "[W]hen the intent of the parties is plain[,] and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016). "[A] court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained." Ibid. "At the same time, 'the law grants particular

9

leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'"  Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)).  "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'"  Ibid. (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)).

In the present matter, the MSA does not require a rabbi to serve as arbitrator.  Instead, the MSA states:  "If no permeant [sic] arbitrator is agreed on within 3 months of this agreement being signed, then [Rabbi] Herszaft will have the sole discretion of choosing another permanent arbitrator."  This language plainly does not require the selection of a rabbinical arbitrator.  Nor does it designate Rabbi Herszaft to appoint an arbitrator upon future vacancies. See Quinn, 225 N.J. at 45 (recognizing MSAs are governed by basic contract principles and, as such, courts should implement the parties' intentions pursuant to the agreements' plain terms).  Accordingly, there was no need for the court to consider extrinsic evidence of the parties' intent as plaintiff now argues.  See Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006) (holding only when a contract is ambiguous in a material respect must the parties be afforded the

opportunity to ascertain the contract's meaning through the submission of extrinsic evidence).

We need not consider plaintiff's newly-minted argument that Rabbi Marburger was empowered to appoint a new arbitrator after Rabbi Markin was disqualified. See N.J. Div. of Youth and Fam. Servs. v. B.H., 391 N.J. Super. 322, 343 (App. Div. 2007) (recognizing we may decline to address issues raised for the first time on appeal unless the issues touch on "the jurisdiction of the trial court or concern matters of great public interest" (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973))). Similarly, because plaintiff's remaining arguments were not raised before the Family Part, we decline to consider them. However, to the extent plaintiff's religious question argument could be viewed as a matter of public interest, we briefly address it.

Our Supreme Court has recognized "[t]he entanglement test under the Establishment Clauses of our constitutions forbids government adoption and enforcement of religious law. That test also forbids government resolution of religious disputes." Ran-Dav's Cnty. Kosher, Inc. v. State, 129 N.J. 141, 158 (1992). Thus, "civil courts may resolve controversies involving religious groups if resolution can be achieved by reference to neutral principles of law, but . . . may not resolve such controversies if resolution requires the interpretation of

11

religious doctrine." Id. at 162. The application of "[n]eutral principles may be particularly suited for adjudications of . . . civil contract actions, . . . but not where disputes involve interpretations of religious doctrine itself." Ibid.

In Satz v. Satz, 476 N.J. Super. 536, 553 (App. Div. 2023), we applied Ran-Dav's principles and affirmed a trial court's decision enforcing an MSA mandating the parties participate in Bais Din proceedings related to their religious divorce. In doing so, we noted "[t]he orders entered in th[at] case scrupulously avoid[ed] entanglement with religion because the trial court applied well-established principles of civil contract law, not rabbinical law." Ibid.

Here, in determining Kornitzer was "familiar with the education and religious upbringings of the children," pursuant to the terms of the prior January 18, 2024 order, the motion judge did not entangle herself with religion or interpret religious doctrine, as plaintiff now argues. Indeed, the order did not require the interpretation of any religious principles. Nor does Kornitzer's ongoing role as arbitrator under the MSA threaten to involve the court in religious matters. Instead, the motion judge merely enforced the court's prior order appointing an arbitrator who understood the children's religious upbringing requirements. See ibid.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M. C. Harley*

Clerk of the Appellate Division

A-1647-24